# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT


## CW 14-697 consolidated with CA 14-827, CA 14-828


**IN RE:  ELEANOR PIERCE (MARSHALL) STEVENS LIVING TRUST**

**\*\*\*CONSOLIDATED WITH\*\*\***

**IN RE:  ELEANOR PIERCE (MARSHALL) STEVENS LIVING TRUST AND**

**ELEANOR PIERCE STEVENS REVOCABLE GIFT TRUST**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2007-6723 C/W 2009-3827
HONORABLE G. MICHAEL CANADAY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JOHN D. SAUNDERS**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*


Court composed of John D. Saunders, Elizabeth A. Pickett, and John E. Conery, Judges.


**APPEALS DISMISSED IN PART.  JUDGMENT AFFIRMED.**
**WRIT DENIED.**

**Daniel A. Kramer**
**Hunter William Lundy**
**T. Houston Middleton, IV**
**Rudie Ray Soileau, Jr.**
**Lundy, Lundy, Soileau & South**
**P. O. Box 3010**
**Lake Charles, LA 70602**
**(337) 439-0707**
**COUNSEL FOR RESPONDENT/APPELLEE:**
    **Preston Marshall**
    **Patrick Wright**

**Henry Camille Perret, Jr.**
**Jude C. David**
**Perret, Doise L.L.C.**
**P. O. Box 53789**
**Lafayette, LA 70505**
**(337) 593-4900**
**COUNSEL FOR RESPONDENT/APPELLEE:**
    **Preston Marshall**
    **Patrick Wright**

**Kenneth Michael Wright**
**Attorney at Law**
**203 West Clarence St.**
**Lake Charles, LA 70601**
**(337) 439-6930**
**COUNSEL FOR RESPONDENT/APPELLEE:**
    **Preston Marshall**
    **Patrick Wright**

**Scott James Scofield**
**Phillip W. DeVilbiss**
**Scofield, Gerard, Pohorelsky, Gallaugher & Landry, L.L.C.**
**P. O. Drawer 3028**
**Lake Charles, LA 70602**
**(337) 433-9436**
**COUNSEL FOR APPLICANT/APPELLANT:**
    **Finley Hilliard**

**SAUNDERS, Judge**

This case is before us on appeal from three separate judgments against Finley Hilliard (hereafter "Appellant") relative to his status as co-trustee of the Eleanor Pierce (Marshall) Stevens Living Trust (hereafter "the Trust") and an application for supervisory writ relative to a denial of Appellant's motion for new trial. For the following reasons, we dismiss the appeals in part, affirm the 2013 judgment, and deny the relief sought by the writ application relative to the denial of Appellant's motion for new trial.

## FACTS AND PROCEDURAL HISTORY

Eleanor Pierce (Marshall) Stevens established the Trust in 1979. In 2000, Appellant began serving as trustee. The terms of the Trust have been amended several times over the years. In 2006, the Trust was amended to appoint Preston Marshall (hereafter "Preston") to the office Trust Protector. In 2007, Article XI, Paragraph B of the Trust was amended to provide:

> should the Trust Protector determine, in his or her sole discretion, that the individual then serving [as trustee] cannot properly represent the interest of the beneficiaries, the Trust Protector may remove the trustee, with or without cause, and designate one or more residents of the State of Louisiana to succeed to the office of trustee.

### Appellant's Withdrawal as Trustee

On July 29, 2009, Appellant executed an affidavit stating, in pertinent part:

> NOW THEREFORE, [Appellant] does hereby resign as Trustee of [the Trust] and the Eleanor Pierce Stevens Revocable Gift Trust effective upon the appointment and acceptance of one or more successor trustees being appointed and confirmed and taking the oath of office to serve as trustee or co-trustees of said trust in accordance with the provisions of said trust.

Thereafter, on August 5, 2009, Appellant filed a Petition for Modification of Trust. In his Petition, Appellant requested several modifications to the terms of the trust.

One of the requests for modification was to again modify Article XI, Paragraph B to read:

> B. *Successor Trustee.* Following Settlor's death, should the Trustee resign or cease to serve as trustee or the office of Trustee otherwise becomes vacant for any reason whatsoever, the Trust Protector shall succeed as a co-trustee and shall designate one or more other individuals to succeed to serve as co-trustees; provided, however, that at least one of the trustees shall at all times be a resident of the State of Louisiana. Following Settlor's death, should the Trust Protector determine, in his or her sole discretion, that the individual or individuals then serving in that capacity cannot properly represent the interests of the beneficiaries, the Trust Protector may remove the trustee or trustees, with or without cause, and designate one or more individuals to succeed to the office of trustee; provided, however, that at least one of the trustees shall be a resident of the State of Louisiana.

He further requested that the trial court:

> permit and authorize the resignation of [Appellant] as trustee of [the Trust] subject to the Trust Protector, [Preston], accepting the appointment as a co-trustee and taking the oath of office and designating one or more additional co-trustees pursuant to the modification and amended provisions of [the Trust] . . . .

On the same day, judgment was rendered modifying the terms of the trust and "permitting and authorizing" the withdrawal of Appellant as trustee. Preston took the oath of office on August 28, 2009.

## The Federal Litigation

J. Howard Marshall, II ("J. Howard") and Eleanor Pierce (Marshall) Stevens (hereafter "Stevens") were married from 1931 to 1960. As part of her divorce settlement with J. Howard, Stevens received shares of Marshall Petroleum, Inc. (hereafter "MPI") stock. In 1984, Stevens transferred all of her shares of MPI to the Trust and then into four additional trusts. In 1995, J. Howard sold his MPI stock back to the company. Because it was sold below market value, it increased the value of the other shareholders' stock. The IRS later determined the sale to be

an indirect gift of MPI stock to MPI's other shareholders, including Stevens and the Trust.

At the time of the stock sale, J. Howard did not pay gift taxes. He died shortly after the sale. When his estate did not pay the gift taxes, in 2010, the Government brought suit against the donees, seeking to recover the unpaid gift taxes and to collect interest from the beneficiaries. The Government also sought to recover from Appellant and E. Pierce Marshall, Jr. (hereafter "E. Pierce Jr."), who is Appellant's brother and executor of Stevens' Estate. The Government asserted that Appellant used funds from the Trust to pay accounting and legal fees for charitable organizations other than the Trust and, with E. Pierce Jr., filed joint tax returns for the Trust and Stevens' Estate and permanently set aside $1,119,127 of the Trust's funds for charitable purposes. The Government asserted that these actions were violations of the federal priority statute, 31 U.S.C. § 3713.

On the Government's motion for summary judgment against E. Pierce Jr. and Appellant for violations of the federal priority statute, the federal district court found Appellant individually liable for paying accounting and legal services out of the Living Trust for other charitable organizations. The federal district court also found Appellant and E. Pierce Jr. jointly liable for the $1,119,127 they had set aside in the Trust for charitable purposes, for which they claimed charitable deductions.

On appeal from the federal district court, Appellant asserted that the district court erred in holding him liable under the federal priority statute, arguing that the knowledge requirement had not been proven, as the Government had not yet made an actual claim at the time the distributions and payments were made by the Trust and he had received erroneous legal advice pertaining to the distributions and payments. In its November 10, 2014 judgment, the Fifth Circuit explained:

"Actual knowledge is not required; '[t]he knowledge requirement of [31 U.S.C. § 3713] may be satisfied by either actual knowledge of the liability or notice of such facts as would put a reasonably prudent person on inquiry as to the existence of the unpaid claim of the United States.'" *U.S. v. Marshall*, 771 F.3d 854, 875 (5th Cir. 2014) (quoting *Leigh v. Comm'r*, 72 T.C. 1105, 1110 (1979)). The court noted that Appellant admitted in deposition that he had knowledge of the potential claims. Thus, the federal appellate court "[held Appellant] . . . knew of the potential liability to the Government, and thus, the Federal Priority Statute applies." *Id.*

### The Current Litigation

In a letter dated December 13, 2012, following the judgment of the federal district court against Appellant and E. Pierce Jr. becoming final, E. Pierce Jr. sent a letter to Preston and Appellant demanding that the Trust pay the bond premiums and legal fees for the appeal of the federal district court judgment. The demand letter included a request for the Trust to pay the costs of the appeal for the judgments rendered against Appellant and E. Pierce Jr., personally. By a second letter dated January 2, 2013, E. Pierce Jr. reiterated the demand for the Trust to pay the costs of the appeal of the personal judgments against Appellant and E. Pierce Jr.

On January 14, 2013, Appellant filed an ex parte petition for instructions and approval of withdrawal of the trustee's conditional resignation, containing the following:

> On or about August 5, 2009, there was a further filing with this Court entitled "Petition for Modification of Trust" which was assigned to Division "E", No. 2009-3927, in which the then current trustee, [Appellant], purportedly resigned the office of Trustee by affidavit dated July 29, 2009, on the conditions that [Preston], who was the Trust Protector, succeed [Appellant] as a co-trustee, take the oath of office of co-trustee, and designate "one or more additional co-trustees pursuant to the modification and amended provisions of [the Trust]", which did require, at Article XI B., for at least one additional co-trustee to be named, and to be a Louisiana resident.[]

> The conditions contained in the Court's Order accepting the modification and amendment of the Trust required that the then Trust Protector, [Preston], assume the office of co-trustee, and take the oath of office, and name a co-trustee who is a resident of Louisiana, but there is no indication that [Preston] has ever taken the oath of office, or named a Louisiana domiciliary to replace Trustee [Appellant], and [Appellant] has in fact acted in the capacity of Trustee on several occasions up to the date of the filing of this Motion.

> [Appellant] hereby formally withdraws his resignation and will continue in the office of Trustee [].

In the petition for instructions, Appellant alleged:

> [Appellant] and [E. Pierce Jr.] have sought to appeal the district court's Judgment against them in their individual and representative capacities . . . .

> in accordance with the Trust's provisions, [E. Pierce Jr.] made written demand upon the Trust, by correspondence . . . to [Appellant], Trustee, and [Preston], Trust Protector/Trustee, to have the Trust pay [for] appellate counsel, and also to fund the filing and posting of supersedeas bonds in order to stave off any possible execution of the Federal Action judgment until after all appeals have been decided.

> . . . .

> Additionally, [Preston] has not responded to the demand of [E. Pierce Jr.] and the Estate, for the funds to pay the attorney fees and supersedeas bond premiums for the appeal . . . .

> . . . .

> [Appellant] thus seeks Court approval for the withdrawal of his conditional resignation, and instructions from the Court as to the authority to pay both the attorney fees to prosecute the above referenced appeal . . . and the bond premiums to pay for the supersedeas bonds . . . .

The trial court granted Appellant's ex parte request on January 14, 2013, as modified on January 17, 2013. Thereafter, the Trust filed a motion to vacate, alleging that Preston, as co-trustee of the Trust, had no notice of Appellant's petition.

On January 23, 2013, Preston contacted the attorney for the IRS, inquiring whether the Government would consider the payment of the individual bond

premiums and attorney fees for Appellant and E. Pierce Jr. as further violation of the federal priority statute. The attorney for the IRS was unequivocally clear; the Government would view payment of the bond premiums and attorney fees on behalf of Appellant and E. Pierce Jr. to be a further violation of the federal priority statute.

By oral judgment on January 25, 2013 and signed on January 30, 2013, the trial court vacated its judgment on Appellant's ex parte petition for instructions, "except to the extent the parties stipulated that the assets of the Eleanor Pierce Stevens Living Trust can be used to pay the premium of the supersedeas bond on behalf of [the Trust] and to collateralize the supersedeas bond."

Shortly after the district court vacated its judgment, Appellant filed an emergency motion, praying for an order "allowing [Appellant] to withdraw his previous conditional resignation as Trustee, that such withdrawal is recognized . . . and [that Appellant] is still a Trustee of [the Trust]." On February 1, 2013, Patrick Wright took the oath of the office of trustee. On February 15, 2013, after a contradictory hearing, the trial court ruled:

> IT IS ORDERED, ADJUDGED AND DECREED that the act of resignaton of [Appellant] as co-trustee of [the Trust] will be effective as of 3:15 P.M., February 4, 2013.

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that through the same actions of attempting to accept the resignation of [Appellant] as co-trustee of [the Trust] that[Preston], as Trust Protector of [the Trust] has effectively removed [Appellant] as co-trustee of [the Trust] as of 3 :15 P.M., February 4, 2013.

At the conclusion of the February 4, 2013 hearing, the trial court explained its ruling, stating:

> Review of the Trust document as it has been amended one or more times clearly allows significant discretion with the trust protector. It is apparent that the intent of the document is that the trust protector have the authority to make many of the decisions ultimately with regard to those who will serve as trustee, as well as oversight of

action of trustees. Historically, it would appear that there has been same significant lack of communication, possibly between Trust Protector [Preston] and Trustee [Appellant].

As of today, this Court has also received notice in conjunction with the request that the resignation be withdrawn, that the resignation has been acted upon by the trust protector; in fact, has named a new co-trustee, taken the appropriate oaths, and the Court appears to have documents designated as Marshall-1demonstrating the same. That notice has not yet formally been received by [Appellant].

Appellant filed a motion for new trial with the trial court on March 8, 2013 and a motion for devolutive appeal on March 18, 2013, moving to appeal the February 15, 2013 judgment removing Appellant as trustee. An order of appeal was signed the same day. In response to the motion for appeal, this court issued a rule to show cause as to why the appeal should not be dismissed as being taken from a partial judgment which had not been designated as appealable pursuant to La.Code Civ.P. art. 1915(B). *In Re: Eleanor Pierce (Marshall) Stevens Living Trust*, 13–939 (La.App. 3 Cir. 9/25/13), 121 So.3d 1289. The rule to show cause was recalled, pursuant to La.R.S. 9:1791, and the appeal was maintained. *Id.*

On October 7, 2013, Appellant filed a motion to remand, requesting the matter "be remanded so that a full and complete record can be created following discovery and ordinary proceedings." A panel of this court explained "[t]he record before us does not reflect that the trial court ruled on [Appellant's] Motion for New Trial; therefore, the jurisdictional defect of prematurity exists" and dismissed the appeal and remanded the matter to the trial court. *In re Eleanor Pierce (Marshall) Stevens Living Trust*, 13-939, p. 3 (La.App. 3 Cir. 2/12/14), __ So.3d __, __. Following a contradictory hearing, by judgment rendered on April 1, 2014 and signed on April 21, 2014, the trial court denied Appellant's motion for new trial.

In his second motion for devolutive appeal, Appellant moved for appeal of the February 15, 2013 judgment, removing him as trustee; the April 21, 2014

judgment, denying his motion for new trial; and "any and all other judgments . . . including but not limited to the August 9, 2009 Conditional Judgment[.]"[1] An order for appeal was signed on April 30, 2014. On June 30, 2014, Appellant filed an application for supervisory writ, seeking review of the trial court's denial of his motion for new trial. A panel of this court granted the writ application for the purpose of consolidation with the pending appeals bearing docket numbers 14-827 and 14-828. On August 25, 2014, the Trust filed a motion to amend the order for devolutive appeal, asserting Appellant's appeals were untimely. It is from this complicated entanglement of facts that the matter is before us again.

## ASSIGNMENTS OF ERROR

In his appeal, Appellant asserts the trial court erred in:

1. finding that Preston, as the Trust Protector, had authority to remove Appellant as trustee because the position of Trust Protector is not recognized by the Trust Code, violates public policy, and cannot be recognized until the position and its duties are defined by the Legislature;

2. finding that Appellant's 2009 offer to resign could be accepted by Preston after the offer to resign was revoked and an unreasonable amount of time had elapsed before Preston's acceptance;

3. allowing Preston to expand the scope of the pleadings to raise new issues over the repeated and timely objection by Appellant; and

4. failing to grant Appellant's motion for new trial.

---

[1] Appellant's Motion and Order for Devolutive Appeal both state that Appellant seeks to appeal the trial court's August 9, 2009 judgment. We have reviewed the record and can find no judgment rendered on August 9, 2009. Appellant's Motion and Order likely refer to the August 5, 2009 and our analysis will address the August 5, 2009 judgment.

## STANDARD OF REVIEW

Findings of fact are subject to review for manifest error. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). To warrant reversal of a trial court's findings of fact, after reviewing the record in its entirety, an appellate court must first find that a reasonable factual basis does not exist for the finding, and, second, determine that the record establishes that the finding is clearly wrong or manifestly erroneous. *Stobart v. State*, DOTD, 617 So.2d 880 (La.1993). An appellate review of a question of law "is simply a review of whether the trial court was legally correct or legally incorrect," with "no special weight to the findings of the trial court." *Hebert v. La. Licensed Prof'l Vocational Rehab. Counselors,* 07-610, p. 10 (La.App. 3 Cir. 3/4/09), 4 So.3d 1002, 1010, *writs denied*, 09-0750, 09-0753 (La. 5/22/09), 9 So.3d 144.

## TIMELINESS OF THE APPEAL OF THE 2009 JUDGMENT

Preliminarily, we must address the timeliness of the appeal of the 2009 judgment. On August 25, 2014, the Trust filed a motion to amend the order for devolutive appeal, asserting the appeals of the 2009 judgment and "all other properly appealable rulings in this matter" are untimely. For the reasons below, we find the appeal of the 2009 judgment to be untimely; therefore, we dismiss it.

In his response to the Trust's motion and in briefing his second assignment of error, Appellant asserts there is no evidence in the record that a Notice of Judgment was served after the 2009 judgment was rendered; thus, the appeal of the 2009 judgment was timely. Louisiana Code of Civil Procedure art. 1913 defines the circumstances under which a notice of judgment is required. "If notice of judgment is not furnished as required, the delay for seeking an appeal does not ordinarily begin to run." *Ouachita Equip. Rental, Inc. v. Dyer*, 386 So.2d 193, 194 (La.App. 3 Cir. 1980). Paragraphs B and C of La.Code Civ.P. art. 1913 describe

the specific method of providing the required notice of judgment following a default judgment, which are inapplicable here. However, Paragraph A of La.Code Civ.P. art. 1913 provides: "[N]otice of the signing of a final judgment . . . is required in all contested cases."

Clearly, the case giving rise to the August 5, 2009 order was not a "contested case." La.Code Civ.P. art. 1913. There was no defendant and no answer or exception was filed. Instead, the order was granted pursuant to Appellant's own Petition for Modification of Trust, and, in brief, he notes that "Preston oversaw the drafting and filing of [the petition]" giving rise to the August 5, 2009 judgment. Moreover, notice of judgment was not requested. Because the case was uncontested and Appellant did not request notice of judgment, Appellant was not entitled to notice of judgment. Thus, the delay for appeal began to run.

Appellant further asserts that the 2009 judgment was conditional and, therefore, not appealable until "Preston finally attempted to effectuate it using the February 15, 2013 judgment." As the first circuit explained in *In re Succession of Faget*, 06-2159 (La.App. 1 Cir. 9/19/07), 984 So.2d 7, 9:

> Under Louisiana law, a final judgment is one that determines the merits of a controversy, in whole or in part. In contrast, an interlocutory judgment does not determine the merits, but only preliminary matters in the course of an action. LSA–C.C.P. art. 1841. An interlocutory judgment is appealable only when expressly provided by law. LSA–C.C.P. art. 2083 C.

The August 5, 2009 judgment does not address merely "preliminary matters." Instead, it clearly determined the merits of the case and disposed of all issues presented. In no less than certain language, the judgment granted each of Appellant's requests to modify the Trust, authorized Appellant to withdraw, authorized Preston to take the oath of the office of trustee and to appoint a co-trustee, and ordered Appellant's continued indemnity. All for which Appellant

10

prayed was granted; nothing was left to be done in the suit. Having addressed all of the substantive requests, the judgment rendered on August 5, 2009 was a final judgment, from which an appeal could have been taken. Appellant did not file a motion for appeal until April 30, 2014, clearly beyond the delay allowed for appeal. Absent a timely filed motion for appeal, an appellate court lacks jurisdiction to hear the appeal. *Rozas v. Montero*, 05-484 (La.App. 3 Cir. 11/2/05), 916 So.2d 444. Accordingly, because Appellant's motion for devolutive appeal was untimely, this court is without jurisdiction to consider this appeal.

For the foregoing reasons, the appeal of the 2009 judgment is dismissed.

## ASSIGNMENT OF ERROR NUMBER ONE

In his first assignment of error, Appellant contends the February 15, 2013 judgment was rendered in error, asserting that the trial court erred in finding that Preston, as Trust Protector, had authority to remove Appellant as trustee of the Trust. For the reasons below, we find this assignment of error lacks merit.

"A trust instrument shall be given an interpretation that will sustain the effectiveness of its provisions if the trust instrument is susceptible of such an interpretation." La.R.S. 9:1753. "In construing a trust, the settlor's intention controls and is to be ascertained and given effect, unless opposed to law or public policy." *In re James C. Atkinson Clifford Trust*, 00–0253, p. 3 (La.App. 1 Cir. 6/23/00), 762 So.2d 775, 776, *writ denied*, 00–2262 (La.10/27/00), 772 So.2d 655. "A trustee shall be removed in accordance with the provisions of the trust instrument or by the proper court for sufficient cause shown." *Martin v. Martin*, 95-0466, p. 4 (La.App. 4 Cir. 10/26/95), 663 So.2d 519, 521, *writ denied*, 95-2806 (La. 1/29/96), 666 So.2d 682 (citing La.R.S. 9:1789(A)).

In this case, in Article XI, Paragraph B (emphasis added), the trust instrument provides:

11

B. *Successor Trustee.* Following Settlor's death, should the Trustee resign or cease to serve as trustee or the office of Trustee otherwise becomes vacant for any reason whatsoever, the Trust Protector shall succeed as a co-trustee and shall designate one or more other individuals to succeed to serve as co-trustees;

provided, however, that at least one of the trustees shall at all times be a resident of the State of Louisiana. Following Settlor's death, *should the Trust Protector determine, in his or her sole discretion*, that the individual or individuals then serving in that capacity cannot properly represent the interests of the beneficiaries, *the Trust Protector may remove the trustee or trustees, with or without cause*, and designate one or more individuals to succeed to the office of trustee; provided, however, that at least one of the trustees shall be a resident of the State of Louisiana.

The settlor's intent is clear and unambiguous with respect to removal of the trustee of the Trust. The instrument allows the person occupying the office of Trust Protector to remove the trustee "in his or her sole discretion . . . with or without cause." Considering "there is a strong public policy in effectuating and protecting the settlor's intent as set forth in the trust document," *Albritton v. Albritton*, 622 So.2d 709, 714 (La.App. 1 Cir. 1993) (*quoting Albritton v. Albritton*, 600 So.2d 1328, 1331 (La.1992), the provision will be "given effect, unless opposed to law or public policy," *In re James C. Atkinson Clifford Trust*, 762 So.2d at 776. Although the office of Trust Protector is not expressly provided for by the Trust Code, Appellant cites, and we find, no law that expressly forbids such a provision. We also find no provision in the Trust Code incompatible with recognition of such an office such that would prohibit its coexistence. Therefore, the provision will be given effect unless it is "opposed to public policy."

Appellant urges this panel to conclude that recognizing the office of trust protector is incompatible with the public policy of Louisiana. In support of this argument, he notes (citing Sterk, *Trust Protectors, Agency Costs, and Fiduciary Duty*, 27 Cardozo L. Rev. 2761, 2777 (2006):

once a protector is appointed, the trustees become, to varying degrees, accountable to the protector. That accountability may lead the trustee to be responsive to the protector's wishes even when the trustee believes that the protector's preferences diverge from the interests of the beneficiaries (and the settlor).

. . . .

. . . . The trustee might be especially inclined to follow the protector's directions in cases where the protector has power to replace the trustee.

In additional support of his argument, he asserts that the office of trust protector is a "foreign concept" in Louisiana and is only "authorized by a few common-law states." For the reasons below, we decline to find that the appointment of a person to the office of trust protector runs contrary to public policy. Moreover, we note also that the office of trust protector is not a foreign concept in Louisiana and has been recognized in our Louisiana Civil Law Treatise.

"A trustee shall administer the trust solely in the interest of the beneficiary." La.R.S. 9:2082. When there is more than one beneficiary, the trustee must administer the trust for the benefit of all the beneficiaries. *Id.* In *Albritton*, 622 So.2d at 713, the first circuit aptly explained:

the statutory provisions relative to the responsibilities of a trustee are rigid and hold the trustee to an even higher fiduciary responsibility to his beneficiary than that owed by a succession representative to heirs. The very word "trustee" implies the strongest obligation on the part of the trustee to be chaste in all dealings with the beneficiary.

"The duty of loyalty is the fundamental duty owed by a trustee as a fiduciary." *Thomas v. Kneipp*, 43,228, p. 7 (La.App. 2 Cir. 5/28/08), 986 So.2d 175, 181 (citing *Albritton*, 622 So.2d 709). "A provision of the trust instrument that purports to limit a trustee's duty of loyalty to the beneficiary is ineffective." La.R.S. 9:2062.

Although a trustee may, to an extent, become accountable to the trust protector, a trust protector can serve important functions in the administration of a

13

trust. Inherent in the trust concept is that the settlor does not intend the trustee to treat the property as his own, despite the fact that title was conferred to the trustee. Instead, the settlor intends that the trustee manage the assets for the benefit of the beneficiaries. However, the trust settlor has often been deceased for many years during the existence of the trust. This makes it "impossible to determine whether the trustee is faithfully representing the wishes of the dead settlor." Sterk, *Trust Protectors, Agency Costs, and Fiduciary Duty*, 27 Cardozo L. Rev. 2761, 2777 (2006).

Traditionally, the beneficiaries have been responsible for ensuring the trustee manages the assets in accordance with the wishes of the settlor, that is, for the benefit of the beneficiaries, through an action for breach of fiduciary duty. However, the action for breach of fiduciary duty is not foolproof. Beneficiaries may not have the expertise to determine whether there has been a breach. Additionally, beneficiaries may be reluctant to take action for any breach detected, as they are, often, dependent on the trustee. Finally, in an action for breach, the trust beneficiaries will bear much of the litigation cost.

By designating a trust protector, the settlor's interest in managing the assets for the benefit of the beneficiaries is better protected, as the trust protector is someone whom the settlor has selected "to represent the settlor's interests in making specified trust decisions that the settlor will be unable to make." Sterk, *Trust Protectors, Agency Costs, and Fiduciary Duty*, 27 Cardozo L. Rev. 2761, 2777 (2006). It has even been said that the trust protector is "the living embodiment of the dead settlor," that is, "a person whose primary function is to exercise judgment on behalf of the trust settlor." By appointing a trust protector, the beneficiaries are no longer saddled with the responsibility of monitoring the trustee for a breach of fiduciary duty and costs of litigation may be avoided as the

settlor "could even give the protector power to remove the trustee without judicial approval."

The office of trust protector is recognized, to some extent, in Louisiana. The Louisiana Civil Law Treatise on Trusts states: "A *trust protector* is usually a person to whom the settlor gives the power to modify or terminate the trust or *to remove and replace a trustee*." 11 La.Civ.L. Treatise, Trusts §5:11 (2d ed.) (emphasis added). Moreover, "[r]ecent amendments to the Trust Code. . . . allow the settlor in Louisiana to nominate 'trust protectors.'" 11 La.Civ.L. Treatise, Trusts, §5:11 (2d ed.). As further explained in the Louisiana Civil Law Treatise: "The settlor might reserve the power to remove the trustee *or grant the authority to another trustee or a beneficiary or an outsider* (for example, settlor's brother)." 11 La.Civ.L. Treatise, Trusts §16:5 (2d ed.)(emphasis added). The "outsider" may be the person appointed to the office of Trust Protector.

Although we decline to conclude that there will never be circumstances where a specific provision of a trust allowing for appointment of a trust protector may infringe on trustee's fiduciary duty to the beneficiaries, having recognized some of the benefits of appointing a trust protector, we find that recognition of such an office does not violate the public policy of Louisiana. Moreover, we find that the instant case is particularly well-suited to such an appointment. In the instant matter, the Government informed Preston, as Trust Protector, that the IRS would view the payment of the expenses of appeal on behalf of Appellant as an additional violation of the federal priority statute. This could potentially lead to another suit against the Trust and further liability, all of which threatens to deplete the trust corpus.

Having found no barrier to the recognition of the office of Trust Protector, we find that the trial court committed no legal error in recognizing Preston's

15

authority to remove Appellant as trustee; therefore, we conclude that the provision should be given full effect in accordance with the intent of the settlor as expressed in the amended trust instrument. Thus, the "trustee shall be removed in accordance with the provisions of the trust instrument," La. R.S. 9:1789, which gives "the Trust Protector [the authority] remove the trustee or trustees, with or without cause." The trial judge concluded that Preston, did, in fact, remove Appellant as trustee of the Trust pursuant to the terms of the Trust, and that factual determination is not now on appeal.

## ASSIGNMENT OF ERROR NUMBER TWO

In his second assignment of error, Appellant asserts that:

the trial court erred in finding that [Appellant's] conditional 2009 offer to resign as Co-Trustee could legally be accepted by Preston on February 4, 2013, after (1) [Appellant] had unambiguously revoked his conditional offer to resign; and (2) an unreasonable amount of time had lapsed before Preston's attempted acceptance, during which [Appellant's] circumstances had materially changed by virtue of the judgment rendered against him.

The trial court ruled "that through the same actions of attempting to accept the resignation of [Appellant] as co-trustee of [the Trust] that[Preston], as Trust Protector of [the Trust] has effectively removed [Appellant] as co-trustee of [the Trust] as of 3:15 P.M., February 4, 2013." The factual determination made by the trial court relative to whether Preston removed Appellant from the position of trustee is not now on appeal; the trial court concluded Preston had removed Appellee. In light of our conclusion that the provision in the Trust authorizing the Trust Protector to remove the trustee "in his or her sole discretion" does not run afoul of Louisiana public policy, we need not address whether Preston, in 2013, could legally accept Appellant's 2009 offer to resign as trustee.

16

## ASSIGNMENT OF ERROR NUMBER THREE

In his third assignment of error, Appellant asserts the trial court erred in allowing the expansion of the pleadings over his objection. At trial, the district court allowed Preston to introduce evidence that he removed Appellant as trustee. Appellant objected. The trial court overruled Appellant's objection on this point and, finding no abuse of discretion, we affirm.

A trial court's determination that an issue is encompassed within the scope of the pleadings is subject to a review for abuse of discretion. *Metoyer v. Roy O. Martin, Inc.*, 03-1540 (La.App. 3 Cir. 12/1/04), 895 So.2d 552, *on reh'g* (3/23/05), *writ denied*, 05-1027 (La. 6/3/05), 903 So.2d 467.

A panel of this court explained in *Johnson v. Louisiana Container Co.*, 02-382, p. 16 (La.App. 3 Cir. 10/2/02), 834 So.2d 1052, 1062, *writ denied*, 02-3099 (La. 5/9/03), 843 So.2d 394 (citing *Brannon v. Boe*, 569 So.2d 1086 (La.App. 3 Cir.1990), that "it is within the trial court's discretion to admit or disallow evidence subject to an objection based upon the scope of the issues and pleadings. Furthermore, it is within the trial court's discretion to determine whether evidence is encompassed by the general issues raised in the pleadings."

On Appellant's objection, the trial court stated:

> for judicial economy I do find that the nexus of facts is such that it would be appropriate for the document to be received and also to allow the Court to hopefully resolve and complete the issue [regarding whether Appellant is trustee] without any further disagreement as to what the status of the various parties are since it's been in a state of flux for apparently two years or more.

We find the trial court did not abuse its discretion. Evidence that Preston removed Appellant as trustee of the Trust was directly relevant to the question of whether Appellant was still trustee. This was the primary issue raised in Appellant's pleadings. The evidence that Appellant was removed by Preston did

17

not expand the pleadings but rather was offered as proof that Appellant was no longer trustee. The evidence presented at the February 4, 2013 hearing concerning Preston's removal of Appellant as trustee of the Trust arose from issues raised in Appellant's pleadings, so it was properly admitted for that hearing. Accordingly, we find that the trial court did not abuse its discretion in admitting such evidence.

## ASSIGNMENT OF ERROR NUMBER FOUR

In his fourth assignment of error, Appellant asserts the trial court erred in failing to grant his motion for new trial, asserting that the trial court did not comply with the mandate of this court that "a full and complete record . . . be created[,]" that the judgment denying the motion for new trial was contrary to the law and the evidence, and that good grounds existed for a new trial. He asserts the same in a writ application.

Generally, an order denying a motion for new trial is a judgment not subject to appeal. *Wallace v. Geo Grp., Inc.*, 11-863 (La.App. 3 Cir. 10/5/11), 76 So.3d 600. Instead, an order denying a motion for new trial may only be reviewed in a request for supervisory relief for abuse of discretion, absent a showing of irreparable injury. *Cormier v. McDonough*, 96-305 (La.App. 3 Cir. 10/23/96), 682 So.2d 814 (citing *Miller v. Chicago Ins. Co.*, 320 So.2d 134, 136 (La.1975)). There has been no showing of irreparable injury in this case. However, "[w]hen an appeal is taken from a final judgment, the appellant is entitled to a review of all adverse interlocutory rulings in addition to review of the final judgment." *Housing Authority for City of Ferriday v. Parker*, 629 So.2d 475 (1993) (citing *Bielkiewicz v. Insurance Company of North America*, 201 So.2d 130 (La.App. 3rd Cir.1967)).

Louisiana Code Civ.P. art. 1972 provides peremptory grounds for granting a new trial and provides that, upon contradictory motion, a new trial must be granted:

(1)  When the verdict or judgment appears clearly contrary to the law and the evidence.

(2)  When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.

(3)  When the jury was bribed or has behaved improperly so that impartial justice has not been done.

Second, La.Code Civ.P. art. 1973 provides: "A new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law." "The standard of review for the grant or denial of a new trial under art. 1972 and art. 1973 is the same-abuse of discretion." *Davis v. Coregis Ins. Co.*, 00-475, p. 8 (La.App. 3 Cir. 12/27/00), 789 So.2d 7, 14, *writ denied*, 788 So.2d 1192 (La. 2001) (citing *Zatarain v. WDSU Television, Inc.*, 95–2600 (La.App. 4 Cir. 4/24/96); 673 So.2d 1181.

In brief, Appellant first asserts that, at the time of his first appeal, which was dismissed because the trial court had not yet disposed of his motion for new trial, this court gave the trial court a "mandate to grant [a] new trial." In support of this argument, he cites the following from this court's 2014 opinion, *In re Eleanor Pierce (Marshall) Stevens Living Trust*, 13-939, p. 3 (La.App. 3 Cir. 2/12/14), __ So.3d __, __:

[Appellant's] motion [for new trial] reiterated his request for this matter "to be remanded so that a full and complete record can be created following discovery and ordinary proceedings." [Appellant] contends that even though La.R.S. 9:1791 required him to appeal the February 15, 2013 judgment within thirty days, a remand of this matter is still necessary. We agree.

He asserts that the last sentence "strongly suggests this Court gave a mandate to grant a new trial."

19

Appellant's reliance on the last sentence in support of his argument is misplaced. The rest of the opinion clearly reveals that this court did not consider the merits of any of Appellant's arguments. As a panel of this court explained:

> The record before us does not reflect that the trial court ruled on [Appellant's] Motion for New Trial; therefore, the jurisdictional defect of prematurity exists, and a remand to the trial court to address [Appellant's] Motion for New Trial is warranted. This court cannot rule upon the validity of the trial court's removal of [Appellant] as a co-trustee unless and until the trial court renders a final judgment in the matter pursuant to its decision on [Appellant's] Motion for New Trial.

Nothing in the opinion suggests that this court considered the merits of any of Appellant's arguments regarding his motion for new trial, including his assertion that a "full and complete record" should be developed. Instead, the matter was remanded for the very purpose of having the trial court consider the merits of the motion.

In brief, Appellant also asserts the judgment of the trial court denying his motion for new trial was in error because the judgment was "against the law and the evidence" on the grounds that it was "clearly contrary to Louisiana's Trust Code." Because we have concluded that a provision in a trust providing for the appointment of a trust protector does not run afoul of Louisiana public policy, we find this argument to lack merit.

Finally, Appellant asserts the trial court erred in "failing to allow [Appellant] to put on evidence" that "good grounds exist[ed] for a new trial." The trial court does not abuse its discretion in refusing to consider evidence which could have been presented at the original trial of the matter. *Gauthier v. Gauthier*, 04-198 (La.App. 3 Cir. 11/10/04), 886 So.2d 681, *writ not considered*, 04-3019 (La. 2/18/05), 896 So.2d 15 (citing *Warner v. Carimi Law Firm*, 98-613 (La.App. 5 Cir. 12/16/98), 725 So.2d 592, *writ denied*, 99-466 (La. 4/1/99), 742 So.2d 560).

Moreover, in brief, Appellant makes only conclusory allegations that there were "good grounds" for new trial, such as "good grounds for new trial can best be seen by looking at how [Appellant] was treated."

Considering the foregoing, we find that Appellant has not shown the trial court abused its discretion in denying Appellant's motion for new trial. Therefore, we deny Appellant's request for supervisory relief.

## THE TRUST'S MOTION TO AMEND ORDER OF APPEAL

On August 25, 2014, the Trust filed a motion to amend the order for devolutive appeal, asserting Appellant's appeals were untimely. In the motion, the Trust "prays that the Court amend the Order for Devolutive Appeal signed by the trial court on April 30, 2014, dismiss those portions of the appeal that are not properly before the Court, and award all costs, attorneys' fees, and any other relief to which the Trust is entitled."

The Trust cites and we find no authority for the proposition that this court may amend an order of the trial court or may impose a sanction of payment of costs and attorney's fees for the costs of filing such a motion. Although we have dismissed the appeals of the judgments not properly appealable, we deny the request for attorney fees and costs.

## CONCLUSION

Considering the foregoing, we dismiss the appeal of the 2009 judgment, affirm the 2013 judgment, do not consider the appeal of the 2014 judgment, and deny the relief sought by the writ application relative to the denial of Appellant's motion for new trial. All costs are assessed to Appellant.

**APPEALS DISMISSED IN PART; JUDGMENT AFFIRMED; WRIT DENIED.**

21