# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## JAC 23-38

**STATE IN THE INTEREST OF**

**P. P.**

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 2022-CC-058
HONORABLE JOHN C. DAVIDSON, DISTRICT JUDGE

**********

## VAN H. KYZAR
## JUDGE

**********

Court composed of Van H. Kyzar, Sharon Darville Wilson, and Charles G. Fitzgerald, Judges.

**AFFIRMED**

**Stacy Christopher Auzenne**
**Auzenne Law Firm**
**P. O. Box 11817**
**Alexandria, LA 71315**
**(318) 880-0087**
**COUNSEL FOR APPELLANT:**
    **D. P. (Father)**

**Clifton John Spears, Jr.**
**Assistant District Attorney**
**Rapides Parish**
**Juvenile Division**
**726 Washington Street**
**Alexandria, LA 71301-8023**
**(318) 767-3988**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Maria Anna Losavio**
**Losavio Law Firm**
**1821 MacArthur Drive**
**Alexandria, LA 71315**
**(318) 767-9033**
**COUNSEL FOR APPELLEE:**
    **P. P. (Minor Child)**

**Malcolm Xerxes Larvadain**
**Attorney at Law**
**626 8th St.**
**Alexandria, LA 71301**
**(318) 445-6717**
**COUNSEL FOR APPELLEE:**
    **L. W. (Mother)**

**KYZAR, Judge.**

An alleged father, D.P., appeals the judgment of the juvenile court finding the minor child, P.P., to be a child in need of care. For the reasons that follow, we affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

The mother, L.W., gave birth to her daughter, P.P., on August 9, 2022.[1] On August 11, 2022, the Department of Children and Family Services (DCFS) received a report that P.P. was a drug-affected newborn, showing signs of withdrawals. P.P. had a low-grade fever, poor feeding, mild tremors when disturbed, and increased muscle tone. The baby's meconium drug screen was pending. According to hospital personnel who were questioned by DCFS, L.W. tested positive for amphetamines and admitted to using fentanyl and methamphetamines. She reported that she had been using IV methamphetamine and fentanyl on and off for the past two years and that she had received methadone from a drug treatment clinic, but that it was not enough to satisfy her cravings.

DCFS filed for and obtained an oral instanter order of removal on August 17, 2022, followed by a written order on August 18, 2022, placing P.P. in the provisional custody of the State of Louisiana. A continued custody hearing was set for August 23, 2022. At the time of the initial removal, L.W.'s whereabouts were unknown. She had been escorted off hospital grounds after hospital staff found her using IV drugs in the bathroom.

On August 23, 2022, the juvenile court signed a continued custody order in favor of the State, finding reasonable grounds to believe P.P. to be a child in need of care and that continued custody was necessary for the child's safety and protection,

---

[1] The initials of the children and their parents are used to protect the identity of the minor child. Uniform Rules—Courts of Appeal, Rules 5–1, 5–2.

by stipulation of the mother. A Court Appointed Special Advocate (CASA) was appointed for the child and an adjudication hearing was set for October 20, 2022.

On September 8, 2022, the State filed a Petition for Custodial Child in Need of Care. It alleged that P.P. is in need of care pursuant to La.Ch.Code art. 606(A), asserting that, on August 11, 2022, DCFS received a report for a drug-affected newborn and found P.P.'s meconium drug screen was positive for amphetamines, methadone, fentanyl, gabapentin, and methamphetamines. The mother, L.W. admitted to the caseworker that she was going to a Veteran's Administration Hospital drug treatment facility and that she had abused illegal drugs for about two years. The State further argued that D.P. is an alleged father and that he was not cooperative with the caseworker during her investigation, telling the worker that she would not be allowed in his house because he does not trust the agency.[2] As a result, the caseworker was unable to assess his living situation for consideration of being a caretaker. D.P. admitted to being escorted off hospital grounds but stated he did not understand why it was done. The State's petition also noted that K.S. is an alleged father as well and that he agreed to submit to a paternity DNA test to determine if he is in fact P.P.'s father. The State concluded that due to a positive meconium drug screen for P.P., D.P.'s unwillingness to work with the caseworker, and L.W.'s current substance abuse issues, P.P. should be adjudicated a child in need of care.

The adjudication/disposition hearing was held on October 20, 2022. By the time of the hearing, L.W. was deceased. K.S., who was represented by appointed counsel but who was not present personally, had been excluded as the father as a result of a negative DNA paternity test, and his counsel was relieved of further

---

[2] At time of the filing, D.P. was alleged as a potential father but was neither listed on the birth certificate as the father, nor was there any proof that he was married to the mother, L.W.

representation at the hearing. D.P. appeared, with counsel. P.P. was also represented by counsel.

At the conclusion of the hearing, the juvenile court found that the State proved the allegations of the petition by a preponderance of the evidence, and that the evidence warranted adjudication of P.P. as a child in need of care. The juvenile court ordered custody to be maintained with DCFS, having found the State made reasonable efforts, with the child's health and safety as its paramount concern, to prevent or eliminate the need for removal of the child from the home and, after removal, to reunify the parents and child or to finalize the child's placement in an alternative safe and permanent home in accordance with the child's permanent plan. Formal judgment was signed that same day. D.P. thereafter instituted this appeal. Herein, he asserts the following issues/assignments of error:

(1) [D.P.'s] Due Process rights were violated when he was not allowed to testify at P.P.'s Adjudication hearing. [D.P.], the non-offending legal/biological father of the drug affected newborn child, P.P., was not allowed to testify at the Adjudication hearing, and denied his Due Process rights provided by the Fourteenth (14th) Amendment to the United States Constitution. This refusal is not apparent from the transcript of the October 20, 2022[] Adjudication Hearing held before the Honorable John Davidson of the 9th Judicial District Court, Parish of Rapides, State of Louisiana.

(2) [D.P.] should not be excluded as the custodial parent of P.P. because of porch debris and yard art. If the State of Louisiana proved that the drug affected newborn child P.P. was indeed a Child in Need of Care, and removed her from her legal and biological non-offended [sic] father, [D.P.'s] custody, does this finding automatically disqualify him from obtaining custody of the child?

## DISCUSSION

### *Timeliness of the Appeal*

We must first consider whether this court has jurisdiction to decide this appeal. Counsel for the minor child, P.P., argues in brief that the appeal by D.P. is untimely and should be dismissed. As reflected above, formal judgment was signed October

3

20, 2022. The record reflects that D.P. filed a notice of appeal on November 10, 2022. Louisiana Children's Code Article 332(A) provides that unless "otherwise provided within a particular Title of this Code, appeals shall be taken within fifteen days from the mailing of notice of the judgment" and where "a timely application for a new trial is made pursuant to Paragraph C, the delay for appeal commences to run from the date of the mailing of notice of denial of the new trial motion." "Notice of judgment, including notice of orders or judgments taken under advisement, shall be as provided in Code of Civil Procedure Article 1913." La.Ch.Code art. 332(B). Pursuant to La.Code Civ.P. art. 1913(A), "notice of the signing of a final judgment, including a partial final judgment under Article 1915, is required in all contested cases, and shall be mailed by the clerk of court to the counsel of record for each party, and to each party not represented by counsel." "The clerk shall file a certificate in the record showing the date on which, and the counsel and parties to whom, notice of the signing of the judgment was mailed." La.Code Civ.P. art. 1913(D).

A review of the record here reflects that there is neither notice of judgment, nor a certificate by the clerk showing that notice of judgment was mailed to the relevant parties.[3] "If notice of judgment is not furnished as required, the delay for seeking an appeal does not ordinarily begin to run." *In re Eleanor Pierce (Marshall) Stevens Living Tr.*, 14-697, 14-827, 14-697, p. 9 (La.App. 3 Cir. 2/18/15), 159 So.3d 1101, 1108 (quoting *Ouachita Equip. Rental, Inc. v. Dyer*, 386 So.2d 193, 194 (La.App. 3 Cir.1980)). We recognize that appeals are to be favored in law and should not be dismissed on purely technical grounds in the absence of clear and specific legal requirements otherwise. *In re State in Interest of Curley*, 287 So.2d

---

[3] A request by this court that the record be supplemented with the notices of judgment resulted in information that such was unavailable.

4

558 (La.App. 1 Cir. 12/17/1973). Accordingly, in the absence of the required notice of judgment, we find the appeal to be timely, as the fifteen-day delay therefore did not begin to run.

*Failure of D.P. to Testify*

D.P. first asserts that the juvenile court erred in not allowing him to testify at the adjudication hearing on October 20, 2022, wherein custody of P.P. was maintained with the State after she was declared to be a child in need of care. After reviewing the transcript of the hearing, we find no merit to D.P.'s claim, as he was represented by counsel at the hearing, made no attempt to testify, and did not raise any objection at the time.

During the October 20 hearing, the State called two witnesses: Latinna Williams, a Child protection investigator for DCFS; and Falon Jackson, an employee by Rapides Foster Care. After direct examination by counsel for the State, both counsel for D.P. and counsel for P.P. cross-examined each witness. The State then rested its case. Counsel for D.P. and P.P. were then given the opportunity to call witnesses if they wished, as reflected in the record.

BY THE COURT: All right.

BY MR. SPEARS: State has nothing further.

BY THE COURT: Okay. Any other witnesses? All right. Then, I would designate child in need of care. I do think you met your burden. The case review would be (interrupted)

BY THE COURT REPORTER: February 9.

BY THE COURT: February 9, 2023.

Neither counsel for D.P. nor counsel for P.P. called any witnesses to testify after being given the opportunity by the juvenile court. In addition to there being no attempt to call any additional witnesses by D.P., there was no objection lodged prior to the ruling by the court designating the child to be in need of care.

כ

> Formal exceptions to rulings or orders of the court are unnecessary. For all purposes it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor; and, if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice him.

La.Code Civ.P. art. 1635.

"It is well-settled under La.Code Civ.P. art. 1635, that such failure to contemporaneously object to the trial court's action constitutes a waiver of the right to complain on appeal." *Stewart v. Batts*, 17-322, p. 13 (La.App. 3 Cir. 10/4/17), 229 So.3d 572, 580 (citing *Broussard v. West–Cal Const. Co., Inc.*, 96-18 (La.App. 3 Cir. 6/12/96), 676 So.2d 743.) Having failed to call any witnesses or express the desire to personally testify, and having failed to lodge any objection at this stage of the proceedings at all, D.P. waived his right to appeal this issue, and it will not be considered further.

### *Child in Need of Care and Placement*

D.P. next claims that the juvenile court erred in finding P.P. to be a child in need of care, maintaining her custody provisionally with the State, and excluding him as the custodial parent of P.P. because of porch debris and yard art. We disagree with D.P.'s assertion that he was not considered for provisional custody simply because of "porch debris and yard art" and further find no manifest error in the juvenile court's finding that P.P. was a child in need of care, or in maintaining placement of the child in the custody of the State at this stage of the proceedings.

Louisiana Children's Code Article 606(A) provides that a child may be adjudicated to be in need of care if any one or more of the following grounds are proven to exist:

> (1) The child is the victim of abuse perpetrated, aided, or tolerated by the parent . . . and his welfare is seriously endangered if he is left within the custody or control of that parent or caretaker.

6

(2) The child is a victim of neglect.

(3) The child is without necessary food, clothing, shelter, medical care, or supervision because of the disappearance or prolonged absence of his parent or when, for any other reason, the child is placed at substantial risk of imminent harm because of the continuing absence of the parent.

(4) As a result of a criminal prosecution, the parent has been convicted of a crime against the child who is the subject of this proceeding, or against another child of the parent, and the parent is now unable to retain custody or control or the child's welfare is otherwise endangered if left within the parent's custody or control.

(5) The conduct of the parent, either as principal or accessory, constitutes a crime against the child or against any other child.

In a child in need of care proceeding, "[t]he state shall have the burden to prove the allegations of the petition by a preponderance of evidence." La.Ch.Code art. 665. It is not the state's duty to prove its case "beyond a reasonable doubt, by clear and convincing evidence, or to disprove every hypothesis of innocence." *State ex rel. L.B.*, 08-1539, p. 3 (La. 7/17/08), 986 So.2d 62, 64.

Appellate courts review a juvenile court's findings of fact under the manifest error standard of review and cannot set aside such findings of fact in the absence of manifest error or unless those findings are clearly wrong. *In re A.J.F.*, 00-948 (La. 6/30/00), 764 So.2d 47. Great deference is owed to the findings of the juvenile courts. *Id.* In *State ex rel. D.H.*, 04-2105, pp. 7–8 (La.App. 1 Cir. 2/11/05), 906 So.2d 554, 560, the first circuit noted:

> [I]t is important that the appellate court not substitute its own opinion when it is the juvenile court that is in the unique position to see and hear the witnesses as they testify. [*In re A.J.F.*, 764 So.2d 47.] Where there is conflicting testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even when the appellate court may feel that its own evaluations and inferences are as reasonable as those of the juvenile court. *Id.*; *see Rosell v. ESCO*, 549 So.2d 840 (La.1989). If the juvenile court's findings are reasonable in light of the record reviewed in its entirety, the appellate court may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence

differently. *Id.*; *see Pinsonneault v. Merchants & Farmers Bank & Trust Co.*, 2001-2217 (La. 4/3/02), 816 So.2d 270.

In order to reverse a fact finder's determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and if such a basis does exist, (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. *See Stobart v. State, through DOTD*, 617 So.2d 880 (La.1993). If there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. *Id.*

Here, the State relied on the testimony of DCFS child protection investigator Ms. Williams, and foster care worker Ms. Jackson, to support its position that P.P. is a child in need of care. Ms. Williams testified that her office received a report for a drug-affected newborn in August 2022 and that P.P.'s meconium drug screen came back positive for amphetamines, fentanyl, gapapen [4] (sic), methadone and methamphetamines. L.W. admitted to the drug use and stated that she was going to go and try to get treatment at the VA for her addiction. Initially after the removal via the instanter order, L.W.'s whereabouts became unknown. By the time of the adjudication/disposition hearing in October, L.W. was deceased. Clearly, as to the actions of L.W. and because of her untimely death, the State established by a preponderance of the evidence that P.P. was a child in need of care.

Although D.P. was alleged to be a potential father of P.P. in the State's petition, he was one of two so named. While DNA testing established that the other potential father, K.S., had been excluded as the father, there was no evidence establishing any biological filiation between D.P. and P.P at the time of the adjudication hearing. According to the testimony of Ms. Williams, D.P. was not listed as the father of P.P. on her birth certificate nor was he married to the child's mother, L.W. Ms. Williams did testify that while DNA paternity testing had been performed on D.P., the results

---

[4] While unclear from the transcript, it appears the reference is to Gabapentin, an anti-seizure medication, which is not classified as a scheduled CDS in Louisiana, but in several other states it's classified as a schedule V CDS.

8

were not yet available. Ms. Jackson testified that D.P. could not adequately be considered as a placement for P.P. at this stage of the proceedings for several reasons, including his lack of proof of filiation.

> Q. Okay. So, as we sit here today, the only thing lacking from [D.P.] would be an assessment of his home, whether he could afford to support children and whether he, in fact, needs or would attend parenting classes. Correct?
>
> A. And whether he, he is the father of [P.P.] (interrupted)
>
> Q. That's right (interrupted)
>
> A. - - 'cause those DNA is pending as well.
>
> Q. That's right. That's correct. But certainly that's something that he's submitted to the test, uh, and the results are pending. Correct?
>
> A. Correct.

Thus, although D.P. refers to himself as P.P.'s father, the record does not support that determination at this time. Furthermore, even if genetic test results show he is the father at some point in the future, such results do not automatically convey filiation under Louisiana law. *State in Interest of C.C.*, 18-440 (La.App. 5 Cir. 10/12/18), 256 So.3d 565, *writ denied*, 18-1766 (La. 12/3/18), 257 So.3d 192. "Filiation is the legal relationship between a child and his parent." La.Civ.Code art. 178 Filiation is established by proof of maternity or paternity or by adoption. La.Civ.Code art. 179.

> In the event that the parents are not married at the time of the child's birth, a biological father has two options to establish his paternity of a child not filiated to another man: one is to acknowledge the child in an authentic act and the second is to file filiation proceedings in a court of competent jurisdiction.

*State in Interest of C.C.*, 256 So.3d at 572. "[S]tatutory law requires a putative father to file an action to establish filiation, rather than allowing the test results alone to

9

establish filiation." *Id.* This record is devoid of any proof that D.P. has instituted a filiation action or has executed a formal acknowledgement of P.P.[5]

Having no proof of filiation between D.P. and P.P. as of the date of the hearing and in light of L.W. having passed away, the juvenile court did not err in finding P.P. to be a child in need of care under these circumstances. It was not error by the juvenile court to fail to include D.P. as a proper placement alternative for the child at this time and to continue P.P.'s custody with the State.

In addition, Ms. Williams testified that that the alleged father, D.P., was not compliant and did not allow her into his home to allow her to assess the child's safety or his capacities as a potential caregiver. She testified that D.P. told her directly that "I was not allowed in his home."

On cross examination by counsel for P.P., Ms. Williams testified that D.P. has fathered fourteen children in addition to his alleged paternity of P.P. In addition, she was questioned about the circumstances surrounding the mother's death as it related to D.P.

> Q. Um, again, very sorry to hear that, uh, [L.W.] has passed away. Um, did you have a chance to discuss the passing of [L.W.] with, with [D.P.], and how that -- what happened?
>
> A. I did.
>
> Q. And did Ms. -- the passing indicate to you that he knew that [L.W.] was not feeling well, in fact, was critically ill and asking to go to the hospital the day she died?
>
> A. Yes.

---

[5] A man may, by authentic act, acknowledge a child not filiated to another man. The acknowledgment creates a presumption that the man who acknowledges the child is the father. The presumption can be invoked only on behalf of the child. Except as otherwise provided in custody, visitation, and child support cases, the acknowledgment does not create a presumption in favor of the man who acknowledges the child.

La.Civ.Code art 196.

10

Q. What was [D.P.'s] response to [L.W.'s] request to go get medical treatment that day?

A. Um, he informed her that he would take her to the hospital, um, once he returned from the basketball game.

Q. And where was the basketball game at?

A. Um, his daughter had a game in Bunkie.

Q. Did he leave her with, um, a telephone or leave her in the care of someone else in case she needed to go to the hospital?

A. No, ma'am.

Q. Or a vehicle?

A. No, ma'am.

Q. And when he came back, she was deceased?

A. Um, from my understanding she was unresponsive and, at that time, he called 911 and tried to get her to respond.

Q. Has [D.P.] at times been uncooperative with you on your end of the case and became (interrupted)

A. Um, yes.

This colloquy casts doubt over D.P.'s ability at the time to provide for the health, safety, and welfare of another, including P.P., who faced medical issues as a result of being a drug-affected newborn. Considering this and the overall evidence presented at the hearing, we find no error in the adjudication and disposition of the juvenile court finding P.P. to be a child in need of care and continuing custody of P.P. with the State, pending further proceedings. Accordingly, the judgment is affirmed.

11

## DECREE

The judgment of the juvenile court finding P.P. to be a child in need of care and continuing custody of P.P. with the State pending further orders of the court is affirmed.

**AFFIRMED.**