STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT


17-111


IN RE:  ELEANOR PIERCE (MARSHALL) STEVENS LIVING TRUST


CONSOLIDATED WITH


17-112


IN RE: ELEANOR PIERCE (MARSHALL) STEVENS LIVING TRUST
AND  ELEANOR PIERCE STEVENS REVOCABLE GIFT TRUST



**********


APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2007-6723 C/W 2009-3827
HONORABLE G. MICHAEL CANADAY, DISTRICT JUDGE


**********


MARC T. AMY
JUDGE


**********


Court composed of Marc T. Amy, Elizabeth A. Pickett, and Billy Howard Ezell,
Judges.



AFFIRMED IN PART.  REVERSED IN PART.



Hunter W. Lundy
Rudie R. Soileau, Jr.
T. Houston Middleton, IV
Daniel A. Kramer
Lundy, Lundy, Soileau & South, L.L.P.
Post Office Box 3010
Lake Charles, LA   70602
(337) 439-0707
COUNSEL FOR OTHER/APPELLEE:
     Preston L. Marshall

**Kenneth Michael Wright**
**Kenneth Michael Wright, L.L.C.**
**203 West Clarence Street**
**Lake Charles, LA   70601**
**(337) 439-6930**
**COUNSEL FOR OTHER APPELLEE:**
    **Preston L. Marshall**

**L. J. Hymel, Jr.**
**Michael Reese Davis**
**Tim Hartdegen**
**Hymel Davis & Petersen, LLC**
**10602 Coursey Boulevard**
**Baton Rouge, LA   70816**
**(225) 298-8118**
**COUNSEL FOR OTHER APPELLEE:**
    **Elaine Marshall**

**Leslie J. Schiff**
**Schiff, Scheckman & White**
**Post Office Box 10**
**Opelousas, LA   70571-0010**
**(337) 942-9771**
**COUNSEL FOR OTHER APPELLEES:**
    **Bradley J. Trevino**
    **Shayna Sonnier**

**Scott J. Scofield**
**Robert E. Landry**
**Phillip W. DeVilbiss**
**Peter J. Pohorelsky**
**Scofield, Gerard, Pohorelsky, Gallaugher & Landry**
**Post Office Drawer 3028**
**Lake Charles, LA   70602**
**(337) 433-9436**
**COUNSEL FOR OTHER APPELLEES:**
    **E. Pierce Marshall**
    **Finley Hilliard**

**AMY, Judge.**

The trial court rendered a 2013 judgment ordering the appellant, a former trustee of the subject trust to, among other things, deliver property of the trust and collect trust files, records, and property held by himself as well as third-parties, including attorneys. Following the appellant's production of certain items, the trust, through its current co-trustee, filed a rule for contempt, alleging that the appellant failed to satisfactorily comply with that underlying judgment. After extensive proceedings, the trial court found both a lack of compliance with the judgment and the appellant's willful disregard in terms of lack of compliance. Accordingly, the trial court entered a judgment of contempt, imposing costs and attorney fees as sanctions. The trial court ruling included the granting of a motion to compel and an order to comply with the prior order, as further delineated in the contempt ruling. The appellant filed this matter, seeking review of both the contempt ruling and the denial of a motion to recuse filed during the proceedings. The appellee has filed motions to strike and to dismiss the appeal. For the following reasons, we affirm the denial of the motion to recuse, but reverse the finding of contempt and the granting of the motion to compel.

### Factual and Procedural Background

The contempt proceedings at issue follow a series of disputes arising from the administration of The Eleanor Pierce (Marshall) Stevens Living Trust. The record indicates that the Trust was created by Eleanor Stevens (formerly Marshall) in 1979 as a Louisiana Trust and that Finley Hilliard began serving as the sole Trustee in 2000. A certified public accountant, Mr. Hilliard and his firm rendered accounting services to the Trust, Ms. Stevens, various members of the Marshall family, and the Estate of Eleanor Pierce Stevens, following her 2007 death.

As discussed in a prior opinion of this court, and as reflected in the present record, the Trust was repeatedly amended. Ms. Stevens' grandson, Preston Marshall

was appointed as Trust Protector in 2006 and as Co-Trustee in 2009. *See In Re: Eleanor Pierce (Marshall) Stevens Living Trust*, 14-697 (La.App. 3 Cir. 2/18/15), 159 So.3d 1101. Following that appointment, and by a series of resignations, withdrawals, and related litigation, Preston, in his role as Trust Protector, ultimately removed Mr. Hilliard as Trustee / Co-Trustee of the Trust in 2013. *Id.*[1] At the time of the proceedings now at issue, Preston served as both Trust Protector and Co-Trustee.[2]

The determination of contempt now under review stems from litigation commenced in April 2013 when Preston, as Trustee, filed a "Petition for Instructions[3] Regarding the Eleanor Pierce (Marshall) Stevens Living Trust and to Compel Delivery of Trust Records to Successor Trustees." Therein, Preston alleged that before removal as Trustee, Mr. Hilliard "retained several law firms, including Vamvoras, Schwartzenberg and Hinch, LLC, Rusty Hardin & Associates, LLP, Hunter, Hunter & Sonnier (and its predecessor Hunter & Blazier, APLC), and Thompson & Knight LLP to represent the Trust in various matters, including the trial and appeal of the Federal Suit."[4] Preston alleged that he made "formal demand" upon

---

[1] Mr. Hilliard's status and Preston's authority as Trust Protector remained contested until this court's ruling in *In Re: Eleanor Pierce (Marshall) Stevens Living Trust*, 159 So.3d 1101.

[2] Patrick Wright also served as Co-Trustee.

[3] Louisiana Revised Statutes 9:2233(A) provides that:

A trustee, a beneficiary, or a settlor in an ordinary or a summary proceeding may apply to the proper court for instructions concerning the trust instrument, the interpretation of the instrument, or the administration of the trust. An order of a proper court issued pursuant to such an application shall be full authority to act in accordance thereunder, and a trustee shall be fully protected from all claims of any person who has or who may subsequently acquire an interest in the trust property.

[4] The Petition references *United States of America v. Robert S. MacIntyre, Individually, and as Temporary Administrator of the Estate of James Howard Marshall II, et al.*, a suit in the United States District Court for the Southern District of Texas wherein the government sought unpaid gift taxes from the Trust as well as the Estate. Mr. Hilliard, as Trustee of The Eleanor Pierce (Marshall) Stevens Living Trust, and Pierce Marshall, Jr., as the Executor of the Eleanor Pierce Stevens Estate, were named as defendants in their respective capacities. While the Trust provided certain costs associated with its own appeal of that federal matter, the Trust's ability and/or willingness to provide individual representation of Mr. Hilliard and Pierce was a matter of contention between the involved parties.

Mr. Hilliard and "upon several law firms he knew Hilliard retained to provide legal services to the Trust, demanding that they produce the Trust's files and records."

Preston contended in the petition, however, that Mr. Hilliard "invoked privilege on behalf of the Trust, and only one firm [had] produced any documents" at that time. Citing La.Code Evid. art. 506(D),[5] Preston asserted that any privilege to the documents belonged to the Trust, not to Mr. Hilliard, who was a former Trustee by that time. He alleged, in turn, that "the law firms will not deliver the files without Hilliard's consent or notice that he does not retain the privilege on behalf of the Trust[,]" but that Mr. Hilliard had a continuing duty to deliver such files to the successor Trustee(s). Therefore, Preston requested that the trial court issue instructions and an order, among other things, that "[a]ll Trust property and powers are vested with him" and that he "is entitled to have control of the Trust's legal files, records, pleadings, documents, communications, notes, and work product[.]" The petition further asked that Mr. Hilliard be ordered to "deliver all of the Trust's legal files, records, pleadings, documents, communications, notes, and work product" to Preston. The petition also requested that Mr. Hilliard be ordered to "contact all attorneys, accountants and other professionals," to "request the return of all Trust files, records, pleadings, documents, communications, notes, and work product," and to, finally, return all of such to Preston. Preston further requested an instruction and/or order that he "is a current holder of any privilege related to [the] Trust's legal files, and may request and receive those files directly from the Trust's legal representatives."

---

[5] Discussing the "Lawyer-client privilege[,]" La.Code Evid. art. 506 provides that:

**D. Who may claim privilege.** The privilege may be claimed by the client, the client's agent or legal representative, or the successor, trustee, or similar representative of a client that is a corporation, partnership, unincorporated association, or other organization, whether or not in existence. The person who was the lawyer or the lawyer's representative at the time of the communication is presumed to have authority to claim the privilege on behalf of the client, former client, or deceased client.

The trial court conducted June 2013 hearings, during which various motions and petitions were argued, including the Petition for Instructions, as well as a Petition for Intervention filed by E. Pierce Marshall, Jr., "individually, as Executor of the Estate of Eleanor Pierce (Marshall) Stevens, and as the provisional tutor of Megan Marshall, the ultimate beneficiary of the Megan Marshall Charitable Remainder Unitrust ("Intervenor")[.]" The resulting judgment continued the motion to file that petition for intervention, the associated petition, and the Trust's exceptions to the petition for intervention "without date, pending discovery[.]"

However, the judgment granted the Petition for Instructions and associated Motion to Compel Production of Trust Records.

By that July 22, 2013 judgment, the trial court ordered Mr. Hilliard to:

1. Deliver to his counsel all documents, records, communications and files related in any way to the Trust, its current or former Trustees, its assets, liabilities, or business (collectively, the "Trust Records") in his possession within ten (10) days of the signing of this Judgment. Thereafter, Finley Hilliard's counsel will deliver these Trust Records to counsel for Preston within thirty (30) days of the signing of this Judgment. In the event a privilege is claimed, Finley Hilliard will deliver to the Court, for an *in camera* inspection, all documents for which privilege is claimed and a Privilege Log meeting the requirements of Louisiana Code of Civil Procedure article 1424(C). The Privilege Log will concurrently be delivered to all counsel of record.

2. Obtain, within ten (10) days of the signing of this Judgment, all Trust Records, original Trust files, and other Trust property from attorneys or other third parties who may hold them that were prepared or dated at any time within the last ten (10) years, including, without limitation, those in the possession of Vamvoras, Schwartzenberg and Hinch, LLC; Rusty Hardin & Associates, LLP; Hunter, Hunter & Sonnier, L.L.C. (and its predecessor Hunter & Blazier, APLC); and Thompson & Knight LLP. Hilliard will demand delivery of the Trust Records from the holders and present a copy of this Judgment ordering such production.

3. Delivery, within thirty (30) days of the signing of this Judgment, to counsel for Preston Marshall all Trust Records, original Trust files, and other Trust property obtained from attorneys and other third parties in response to the preceding paragraph, unless a privilege is claimed on a particular record, file or property in question. In the event a privilege is claimed, Finley Hilliard will deliver to the court, for an *in camera* inspection, all documents for which privilege is claimed and a Privilege Log meeting the requirements of Louisiana Code of Civil

4

Procedure article 1424(C). The Privilege Log will concurrently be delivered to all counsel of record.

. . . .

IT IS FURTHER ORDERED that, pursuant to Louisiana Code of Professional Conduct Rule 1.16(d), all attorneys possessing any Trust Records, Trust files, or Trust property are required and hereby ordered to deliver them, in their entirety, to Finley Hilliard upon request and upon Hilliard's presentation of this Judgment.

IT IS FURTHER ORDERED that the documents and records will be subject to a reasonable protective order negotiated between the parties, which will not limit the ability of the Trustees to use the documents or records for Trust related purposes.

The record contains no indication that either party sought review of the July 22, 2013, judgment. Rather, Mr. Hilliard, through counsel, sent a letter dated the same day as the signing of the judgment to the delineated law firms requesting Trust documents.[6] Thereafter, he delivered documents submitted by the law firms, as well as prepared privilege and ownership logs for contested documents. Mr. Hilliard submits that he delivered as many as 70,000 pages of documents and that the privilege and ownership logs entailed as many as 600 pages.

By August 21, 2013, Mr. Hilliard filed a ten-page "Notice of Compliance with Court Order" wherein he described his efforts to comply with the July 22, 2013 order, as well as description of and detail surrounding the documents and privilege logs related to the law firms' production. On that same date, Mr. Hilliard, Pierce, and

---

[6] The letter reads:

Our firm represents Finley L. Hilliard, the former Co-Trustee of the Eleanor Pierce (Marshall) Stevens Living Trust, in connection with litigation pending concerning the trust in Louisiana. Recently, Preston Marshall filed a Petition for Instructions demanding that Mr. Hilliard obtain and produce the legal files of the Trust in the possession of its attorneys. I have attached hereto a Judgment signed by the Louisiana 14th Judicial District Court wherein the court has ordered Mr. Hilliard to obtain from your office any and all legal files in your possession relating to your representation of the Living Trust within ten days.

Accordingly, please forward to my office any and all file material in your possession concerning your representation of the Living Trust within ten days of July 22, 2013. If you have any questions, please do not hesitate to contact me.

5

Elaine Marshall,[7] filed a thirteen-page "Certification of Joint Privilege Log and Assertion of Joint Interest Privilege[.]" Each described their respective claims of ownership and privilege associated with the documents listed on the privilege and ownership logs. Mr. Hilliard denied that he had been given permission by third parties asserting ownership to deliver the subject documents.

The present iteration of this case was instituted on May 29, 2014, when the Trust, through Preston as Co-Trustee, filed a Rule for Contempt and Other Relief. Therein, the Trust represented that Mr. Hilliard failed to comply with the July 22, 2013, judgment. The motion particularly questioned lack of delivery of files from the law firm of Hunter, Hunter & Sonnier, LLC, which, the Trust asserted, had represented the Trust. The Trust, therefore, requested that the trial court find Mr. Hilliard in contempt and order him to pay attorney fees, reasonable expenses, and costs. Additionally, the Trust requested that the trial court declare that "Preston Marshall is Trust Protector, and Co-Trustee of the Living Trust and is entitled to the possession of all files of any lawyer who is, or has in the past performed legal services for the Living Trust." Mr. Hilliard opposed the Rule for Contempt, detailing his efforts to gather and deliver files as ordered and further seeking the imposition of sanctions against Preston pursuant to La.Code Civ.P. art. 863.

The trial court heard the Rule for Contempt and Mr. Hilliard's corresponding request for sanctions over twelve days of hearings. Following those hearings, but before the entering of judgment, Mr. Hilliard filed a motion to recuse Judge Michael Canaday, the trial judge presiding over this matter. By January 12, 2016 order, Judge Canaday referred the motion to recuse "to another judge of the Fourteenth Judicial District Court" pursuant to La.Code Civ.P. art. 155(B).[8] The matter was subsequently

---

[7] Elaine is identified in the record as Pierce and Preston's mother.

[8] Titled, in part, "Selection of judge to try motion to recuse[,]" and applicable to courts having two or more judges, La.Code Civ. art. 155(B) provides: "B. In a district court having more than two judges, the motion to recuse shall be referred to another judge of the district court for trial

6

assigned to Judge Robert Wyatt who ultimately denied the motion by May 10, 2016 judgment.

Judge Canaday thereafter returned to the merits of the rule for contempt, finding Mr. Hilliard "in civil contempt of [the] Court for his failure to comply with the July 22, 2013, Court Order."[9] In doing so, and as addressed more fully below, the trial court made factual findings regarding Mr. Hilliard's efforts to comply with the order, his motivation in doing so or not doing so, and the ownership of certain documents at issue. The trial court further directed Mr. Hilliard to comply with the July 22, 2013 order, as delineated in the judgment, and ordered Mr. Hilliard to "pay all costs and reasonable attorneys' fees related to the Motion to Compel and the Contempt Proceedings."[10] The trial court denied Mr. Hilliard's request for the imposition of sanctions against Preston or his attorney.

Thereafter, Preston filed a motion to amend judgment, asserting that the initial judgment was ambiguous in the order that Mr. Hilliard turn over Trust documents.[11] Following a hearing, the trial court amended the judgment, ordering Mr. Hilliard to "turn over all documents in his possession that are Trust property to the Trustee, Preston Marshall, and further all documents deemed to be privileged or have multiple entity association in his possession to the Court for an *in camera* inspection, or in the alternative notify the Court that other entities are believed to be in possession of documents that may be Trust related."

Mr. Hilliard appeals, assigning the following as error:

---

through the random process of assignment in accordance with the provisions of Code of Civil Procedure Article 253.1."

[9] Judge Canaday issued both an initial judgment signed on July 25, 2016 and an amended judgment of August 26, 2016. The latter document was entered upon Preston's motion and assertion that the initial judgment contained ambiguous language regarding the delivery of documents.

[10] The judgment ordered "that Preston Marshall file a Rule to Show Cause for a contradictory hearing to determine the costs and attorneys fees."

[11] The initial, July 26, 2016, judgment ordered that: "Finley Hilliard turn over to the Court all documents in his possession that are Trust property to the Trustee, Preston Marshall[.]"

7

I.     In granting a motion for contempt against a former Co-Trustee ordered to deliver to the current trustee documents belonging to the trust pursuant to La.R.S. 9:2069, the trial court erred:

(A)    In finding that the former Co-Trustee violated the Order by not delivering documents belonging to non-parties or filing some lawsuit or claim on behalf of the trust; or in not notifying the trial court of speculation that a non-party law firm might "possibly" be withholding documents despite that law firm's reasonable explanations concerning the actions it took.

(B)    In finding that the former Co-Trustee intended to defy the Order and disrespect the court without a justifiable excuse when the former Co-Trustee did in fact deliver all trust property, and went further to disclose to the trial court the legal and ethical obligations he had to respect the Constitutional rights of non-parties.

(C)    In awarding attorney fees on a motion for contempt having nothing to do with discovery or any alleged violation of an order compelling discovery.

III [sic].     In light of the trial court's concession that he engaged in numerous *ex parte* discussions with the attorney for a party, the lack of evidence of any exigent circumstances that required these *ex parte* discussions, and the trial court's failure to disclose these *ex parte* discussions, the Recusal Judge erred in:

(A)    Failing to grant the motion to recuse based upon the existence of reasonable grounds to question the trial court's impartiality pursuant to Code of Judicial Conduct – Canon 3(C).

(B)    Failing to find that the objective evidence, including the numerous *ex parte* contacts where no exigent circumstances required them and the failure to disclose the same, established a bias on the part of the trial court.

(C)    Failing to allow a party full and open discovery into the undisclosed *ex parte* communications from which that party was excluded.

In response, Preston filed a motion to strike and a motion to dismiss appeal with this court, both of which were referred to the panel on the merits. We first turn to consideration of these motions.

**Discussion**

*Motion to Strike and Motion to Dismiss*

Both of Preston's pre-submission motions concern Mr. Hilliard's second assignment of error related to the trial court's denial of the motion to recuse. In short, Preston notes that the order of appeal granted to Mr. Hilliard was "from the final judgment rendered as to him in the above captioned case on July 25, 2016, and from the amended judgment rendered on August 26, 2016." Thus, he suggests that the May 10, 2016, judgment of the denial of the motion to recuse may not be included in that order of appeal. Referencing La.Code Civ.P. art. 2083(C), Preston further notes that the denial of the motion to recuse is interlocutory and "is appealable only when expressly provided by law." He thus contends that any "allegations and argument relating to [Mr. Hilliard's] improper attempt to appeal the trial court's denial of [Mr. Hilliard's] Motion to Recuse" must be stricken from his brief. Preston continues this argument in the related Motion to Dismiss Improper Attempt to Appeal Trial Court's Decision on Recusal.

However, "an interlocutory ruling is reviewable on appeal of a final, appealable judgment in the case." *Louisiana High School Athletics Ass'n, Inc. v. State*, 12-1471, p. 26 (La. 1/29/13), 107 So.3d 583, 603. *See also Williams v. Bestcomp, Inc.*, 15-761 (La.App. 3 Cir. 2/3/16), 185 So.3d 269, *writ denied*, 16-0385 (La. 4/15/16), 191 So.3d 1032. As Mr. Hilliard presents the merits of this matter as a final, appealable judgment pursuant to La.Code Civ.P. art. 1915(A), the denial of the underlying interlocutory ruling on the motion to recuse is reviewable upon consideration of that appeal. Accordingly, we deny Preston's motion to strike and the motion to dismiss. We turn to consideration of the denial of the motion to recuse.

*Motion to Recuse*

As noted above, Mr. Hilliard filed the motion to recuse after the completion of hearings on the Rule for Contempt, but prior to the trial court's ruling. Therein, Mr.

9

Hilliard alleged that he had become aware of e-mail communications between Preston and one of his attorneys indicating the occurrence of *ex parte* communications between that attorney and Judge Canaday during the earlier stages of the litigation. Suggesting that the communications were prohibited by Canon 3(A)(6) of the Louisiana Code of Judicial Conduct, Mr. Hilliard requested that Judge Canaday recuse himself either pursuant to Canon 3(C) of the Louisiana Code of Judicial Conduct or pursuant to La.Code Civ.P. art. 152(A). Alternatively, Mr. Hilliard alleged that counsel's representations within the e-mail communications revealed bias requiring Judge Canaday's recusal pursuant to La.Code Civ.P. art. 151(A)(4).

Judge Wyatt considered the matter upon referral and, following two days of hearings, denied the motion to recuse. He explained in reasons for ruling that upon consideration of testimony and Mr. Hilliard's evidentiary submissions—e-mail and telephone records—"[t]here was no showing of bias, prejudice or untoward interest in the cause of its outcome, no bias or prejudice toward or against any party to any extent such that [Judge Canaday] would be unable to conduct a fair and impartial proceeding." Judge Wyatt wrote that, instead, "[t]he number of contacts, and the nominal, inconsequential nature of those contacts over a three-year period do not, at least for this court, warrant either a recusal or cause for concern for any party in this matter." Judge Wyatt's denial was not disturbed on subsequent review. *See In re: Eleanor Pierce (Marshall) Stevens Living Trust*, 16-477, 16-478 (La.App. 3 Cir. 7/12/16) (an unpublished writ decision of this court), *writ denied*, 16-1527 (La. 11/18/16), 210 So.3d 282.

Given this court's prior consideration of the issue under review, we are mindful of the law of the case doctrine, a principle that relates to, in part, "the rule that an appellate court will ordinarily not reconsider its own rulings of law on a subsequent

10

appeal."[12] *Arceneaux v. Amstar Corp.*, 10-2329, p. 14 (La. 7/1/11), 66 So.3d 438, 448 (quoting *Petition of Sewerage and Water Bd. of New Orleans*, 278 So.2d 81, 83 (La.1973)). Although the doctrine of the law of the case is discretionary, it "should not be applied in cases of palpable error or where application would result in injustice." *Id.*

Following review of the record, as well as Mr. Hilliard's argument on appeal, we again leave the trial court's denial of the motion to recuse undisturbed upon a finding of no palpable error. In his brief to this court, Mr. Hilliard suggests that recusal was required in this matter pursuant to Canon 3(A)(6)[13] and 3(C).[14] Re-urging his argument from below, Mr. Hilliard argues that Judge Wyatt "applied an incorrect 'actual bias' standard[,]" but that "the proper standard for recusal is the objective standard set forth in Canon 3(C)."

As stated above, Canon 3(C) of the Louisiana Code of Judicial Conduct provides that: "A judge should disqualify himself or herself in a proceeding in which

---

[12] The supreme court further explained that:

Among reasons assigned for application of the policy are: the avoidance of indefinite relitigation of the same issue; the desirability of consistency of the result in the same litigation; and the efficiency, and the essential fairness to both sides, of affording a single opportunity for the argument and decision of the matter at issue.

*Arceneaux*, 66 So.3d at 448 (quoting *Petition of Sewerage and Water Bd*, 278 So.2d at 83).

[13] Canon 3(A)(6) provides, in part, that:

Except as permitted by law, a judge shall not permit private or ex parte interviews, arguments or communications designed to influence his or her judicial action in any case, either civil or criminal. A judge may obtain the advice of a disinterested expert on the law applicable to a proceeding before the judge if the judge gives notice to the parties of the person consulted and the substance of the advice, and affords the parties reasonable opportunity to respond. Where circumstances require, ex parte communications are authorized for scheduling, administrative purposes or emergencies that do not deal with substantive matters or issues on the merits, provided the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex parte communication.

[14] Canon 3(C) provides:

A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned and shall disqualify himself or herself in a proceeding in which disqualification is required by law or applicable Supreme Court rule. In all other instances, a judge should not recuse himself or herself.

the judge's impartiality might reasonably be questioned and shall disqualify himself or herself in a proceeding in which disqualification is required by law or applicable Supreme Court rule." However, and without comment on the appropriateness of such a disqualification under the circumstances of this case, the wording of the Canon indicates that it is directed to the actions of the subject judge alone. Canon 3(C) pointedly indicates that "[a] judge should disqualify himself or herself" or "shall disqualify himself or herself[.]" The text does not provide an independent basis for recusal of a judge by another judge. In addition to the wording of the Canon, jurisprudence supports this distinction as well. *See W.G.T. v. E.A.A.*, 14-4 (La.App. 5 Cir. 9/10/14), 150 So.3d 339; *Radcliffe 10, L.L.C. v. Zip Tube Systems of Louisiana, Inc.*, 07-1801 (La.App. 1 Cir. 8/29/08), 998 So.2d 107, *writs denied*, 09-0011, 09-0024 (La. 3/13/09), 5 So.3d 119, 120.

While Mr. Hilliard suggests that "[t]he Louisiana Supreme Court has held that the proper standard for recusal is the objective standard set forth in Canon 3(C)[,]" we find no such clear guidance in the succinct per curiam opinion he relies upon for that proposition. Instead, in *Folse v. Transocean Offshore USA, Inc.*, 04-1069 (La. 5/7/04), 872 So.2d 467, the supreme court did not articulate a finding of error in the lower court's ruling nor does the per curiam reflect the recusal matter under review. Rather, the supreme court simply reversed a denial of a motion to recuse[15] and entered that ruling under its own authority. *Id.* In totality, the supreme court stated:

> PER CURIAM.
>
> Writ granted. The ruling of the trial court denying relators' motion to recuse is reversed. Judge Pro Tempore Bruno is hereby recused. See Canon 3(C) of the Code of Judicial Conduct ("[a] judge should disqualify himself or herself in a proceeding in which the judge's impartiality might

---

[15] At the time of the 2004 ruling in *Folse*, the Louisiana Code of Civil Procedure had not yet been amended to its present iteration. Louisiana Code of Civil Procedure Article 151(B) provided at that time that: "A judge of any court . . . *may be* recused when he: . . . . (5) Is biased, prejudiced, or interested in the cause or its outcome or biased or prejudiced toward or against the parties or the parties' attorneys to such an extent that he would be unable to conduct fair and impartial proceedings." (Emphasis added.)

12

reasonably be questioned ...”). The case is remanded to the trial court for random reallotment to another judge.

*Folse*, 872 So.2d 467-68. Significantly, La.Const. art. 5, § 5(A) vests the supreme court with "general supervisory jurisdiction over all other courts."[16] Given the supreme court's unique authority[17] in that regard, we do not find merit in the position that its brief per curiam language equates to a directive regarding the standard applicable to review of a ruling on a motion to recuse.

Instead, we turn to consideration of La.Code Civ.P. art. 151, which provides an exclusive list of mandatory grounds for the recusal of a judge. *Slaughter v. Board of Sup'rs of Southern Univ.*, 10-1114 (La.App. 1 Cir. 8/2/11), 76 So.3d 465, *writ denied*, 11-2112 (La. 1/13/12), 77 So.3d 970. With regard to the assertion of bias and/or prejudice, Article 151 provides that:

> A. A judge of any court, trial or appellate, shall be recused when he:
>
> . . . .
>
> (4) Is biased, prejudiced, or interested in the cause or its outcome or biased or prejudiced toward or against the parties or the parties' attorneys or any witness to such an extent that he would be unable to conduct fair and impartial proceedings.

Significantly, Article 151 "do[es] not include a 'substantial appearance of the possibility of bias' or even a 'mere appearance of impropriety' as causes for removing a judge from presiding over a given action." *Slaughter*, 76 So.3d at 471. It instead requires a finding of actual bias or prejudice that is of a substantial nature, and not one based on merely conclusory allegations. *Covington v. McNeese State Univ.*, 10-0250 (La. 4/5/10), 32 So.3d 223. Furthermore, and as a foundational point, it is important to recall that "[a] judge is presumed to be impartial." *Slaughter*, 76 So.3d at 471.

---

[16] *See also In re Free*, 16-0434, p. 2 (La. 6/29/16), 199 So.3d 571, 574 (wherein the supreme court explained, within a disciplinary context, that: "Pursuant to its supervisory authority over all lower courts, this court adopted the Code of Judicial Conduct, effective January 1, 1976, which supplements the Constitution's substantive grounds for disciplinary action against a judge. Violations of the Canons of the Code of Judicial Conduct, without more, may serve as the basis for the disciplinary action provided for by La. Const. art. 5, § 25(C).").

[17] By contrast, we note that La.Const. art. 5, § 10 provides, in part, that a court of appeal "has supervisory jurisdiction over *cases* which arise within its circuit[.]" (Emphasis added.)

Thus, while we conclude that a court considering a motion to recuse directed at another judge may be informed by the contours of the Code of Judicial Conduct in its analysis of La.Code Civ.P. art. 151(A)(4), the reviewing judge's ultimate inquiry continues to question the existence of bias, prejudice or interest in the cause or outcome under that Article.[18]

In reasons for ruling, Judge Wyatt rejected the motion for recusal, finding the contacts between Judge Canaday and Mr. Wright not to be "inconsequential" in nature, or, in some instances, unrelated to the proceedings involving the Trust. He noted that he considered both "the multitude of admitted documents" and testimony[19] presented at the hearing before finding that the evidence was "sorely lacking of any bias to call for the recusal of Judge Canaday." To the contrary, Judge Wyatt found that "[t]here was no showing of bias, prejudice or untoward interest in the cause of its outcome, no bias or prejudice toward or against any party to any extent such that [Judge Canaday] would be unable to conduct a fair and impartial proceeding."

Similarly, upon review of the record evidence, consideration of the parties' arguments, and in light of the prior review by a panel of this court, we find Mr. Hilliard's argument regarding recusal to be without merit. To the extent that he contends that Judge Wyatt should have identified bias due to rulings that Mr. Hilliard

---

[18] We note, here, that Mr. Hilliard filed a pre-argument brief informing this court of an unpublished writ decision rendered by the fifth circuit, in which the panel referenced *Folse*, 872 So.2d 467 in its review of the denial of a motion to recuse. *See Succession of O'Krepki*, 17-152 (La.App. 5 Cir. 6/7/17)(an unpublished writ decision). However, we observe that, while referencing *Folse* in a footnote, the fifth circuit began its analysis by citing to La.Code Civ.P. art. 151(A)(4), as well as the requirement of "bias or prejudice of a substantial nature." *Id.* at 3 (citing *Couvillion v. Couvillion*, 00-143 (La.App. 5 Cir. 9/6/00), 769 So.2d 747, *writ denied*, 00-3185 (La. 1/21/01), 781 So.2d 562).

[19] Both Mr. Wright and Judge Canaday testified at the recusal hearing. The record is silent as to the mechanism by which Mr. Hilliard was permitted to either issue a subpoena to or call the latter as a witness. *See* La.Code Evid. art. 605 (providing that: "The judge presiding at the trial may not testify in that trial as a witness. No objection need be made in order to preserve the point."); La.Code Evid. art. 605, cmt. (providing, in part, that: "The Article is designed to operate in conjunction with the provisions on recusation). *See also* La.Code Evid. art. 519(A) (providing that "[n]either a subpoena nor a court order shall be issued to a judge . . . to appear or testify in any civil . . . proceeding, . . . unless, after a contradictory hearing, it has been determined that the information sought is not protected from disclosure by the judicial deliberative process privilege, and all of the following: . . . . (2) The purpose of seeking the information is not to harass the judge, *nor for the mere purpose of seeking recusal of the judge*."). (Emphasis added.)

14

contends were favorable to Preston, we again leave Judge Wyatt's ruling undisturbed. As noted by Judge Wyatt, and in addition to the fact that not all rulings within the course of litigation were favorable to Preston, "[a]ll rulings made by Judge Canaday were subjected to review." *See also David v. David*, 14-999, p. 5 (La.App. 3 Cir. 2/4/15), 157 So.3d 1164, 1168 (explaining that: "Adverse rulings alone do not show bias or prejudice."), *writ denied*, 15-0494 (La. 5/15/15), 170 So.3d 968.

Neither do we find merit in Mr. Hilliard's alternative argument that Judge Wyatt erred in denying him "the right to conduct full and open discovery." He contends that the ability to conduct discovery was the only way for him "to learn exactly what took place in the undisclosed communications from which he was excluded." However, a party seeking recusal "must 'discover' the grounds on his own under either provision and then state them with particularity in writing . . . before a recusal hearing is warranted." *Louisiana State Bd. of Med. Exam'rs v. Golden*, 94-0922, p. 2-3 (La.App. 4 Cir. 9/29/94), 645 So.2d 690, 691 (wherein the fourth circuit evaluated a motion to quash a deposition in an administrative proceeding, equating that procedure to the Code of Civil Procedure articles on recusal and explaining that: "Carried to its logical conclusion, [the mover]'s argument would subject judges and other triers of fact to harassing and time consuming depositions every time any allegedly controversial issue came up."), *writ denied*, 95-0106 (La. 3/10/95), 650 So.2d 1184. *See also Johnson v. Louisiana Dep't of Labor, Office of Workers' Comp.*, 98-0690 (La.App. 1 Cir. 5/14/99), 737 So.2d 898.

Having found no merit in Mr. Hilliard's assignment regarding recusal, we turn to consideration of his arguments regarding the contempt proceeding.

*Contempt*

Burden of Proof

Mr. Hilliard first contends that the trial court employed the incorrect burden of proof in evaluating the Rule for Contempt. The trial court's judgment indicates that it

found Mr. Hilliard to be "in civil contempt of this Court for his failure to comply with the July 22, 2013, Court Order." However, Mr. Hilliard argues that the trial court found him to be in criminal contempt, thus necessitating a higher burden of proof.

Louisiana Code of Civil Procedure Article 221 provides that "[a] contempt of court is any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority."[20] In this instance, the trial court found Mr. Hilliard to have violated Article 221 due to "a willful disregard to [the] July 22, 2013 Order[.]" The trial court specifically found that Mr. Hilliard violated La.Code Civ.P. art. 224, which states, in part, that:

> Any of the following acts constitutes a constructive contempt of court:
>
> . . . .
>
> (2) Wilful disobedience of any lawful judgment, order, mandate, writ, or process of the court[.]

With regard to the issue posed by Mr. Hilliard concerning classification of the contempt as civil or criminal, the supreme court has explained:

> A contempt of court proceeding is either criminal or civil, which is determined by what the court primarily seeks to accomplish by imposing sentence. *Shillitani v. United States,* 384 U.S. 364, 370, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966). In a criminal contempt proceeding, the court seeks to punish a person for disobeying a court order, whereas in a civil contempt proceeding, the court seeks to force a person into compliance with a court order. *State in the Interest of R.J.S.*, 493 So.2d at 1202 and n7 (citing *Shillitani*, 384 U.S. at 364, 86 S.Ct. 1531).

*Dauphine v. Carencro High Sch.*, 02-2005, pp. 14-15 (La. 4/21/03), 843 So.2d 1096, 1107-08. *See also Billiot v. Billiot*, 01-1298 (La. 1/25/02), 805 So.2d 1170. As noted by Mr. Hilliard, criminal contempt, which is a crime, must be proven "beyond a

---

[20] Article 221 further instructs that: "Contempts of court are two kinds, direct and constructive." The present matter involves a complaint of constructive contempt, whereas a direct contempt of court "is one committed in the immediate view and presence of the court and of which it has personal knowledge, or a contumacious failure to comply with a subpoena or summons, proof of service of which appears of record." La.Code Civ.P. art. 222. Louisiana Code of Civil Procedure Article 224 defines constructive contempt of court simply as "any contempt other than a direct one."

16

reasonable doubt of every fact necessary to constitute the contempt charge." *Dauphine*, 843 So.2d at 1108. Civil contempt, however, is proven by a preponderance of the evidence. *Paradise Rod & Gun Club, Inc. v. Roy O. Martin Lumber Co., Inc.*, 14-1184 (La.App. 3 Cir. 4/1/15), 160 So.3d 626.

On review, we find merit in Mr. Hilliard's assertion that the trial court's ruling was, by result, in the nature of punishment and, therefore, constituted criminal contempt. Certainly, the trial court's finding of "willful disregard" to the underlying order is in keeping with a finding of contempt pursuant to La.Code Civ.P. art. 224(2), which instructs that "[w]ilful disobedience of any lawful judgment, order, mandate, writ, or process of the court" constitutes constructive contempt of court.

The contempt ruling ordered Mr. Hilliard to "comply with the July 22, 2013, Court order as more specifically delineated in this order." Thereafter, the judgment ordered Mr. Hilliard to:

> turn over all documents in his possession that are Trust property to the Trustee, Preston Marshall, and further all documents deemed to be privileged or have multiple entity association in his possession to the Court for an *in camera* inspection, or in the alternative notify the Court that other entities are believed to be in possession of documents that may be Trust related.

However, and although it was accompanied by the trial court's ruling on a motion to compel, the trial court imposed no "sentence" or fine as a method of ensuring compliance with the further delineated order. The judgment instead simply ordered Mr. Hilliard to "pay all costs and reasonable attorneys' fees related to the Motion to Compel and the Contempt proceedings."[21] *See, e.g., Clark v. G.B. Cooley Service*, 35,675, p. 15 (La.App. 2 Cir. 4/5/02), 813 So.2d 1273, 1283 (wherein the second circuit explained that "[w]hen a determinate sentence is rendered without setting conditions for the contemnor to avoid the sentence imposed or purge himself from it,

---

[21] Although assessment of attorney fees was deferred for later proceedings, the quantum of those fees may prove significant as this matter presents to this court with twenty-nine volumes of record, seventeen volumes of exhibits, and the records from prior appeals.

the punishment is criminal in nature and cannot be imposed unless constitutional protections are applied in the contempt proceeding.").

This view of the judgment as punitive in nature is in keeping with the Rule for Contempt which contained Preston's allegations regarding Mr. Hilliard's compliance, or lack thereof, with the July 22, 2013, judgment and a subsequent October 2, 2013, order. Preston requested therein that the trial court issue a rule to show cause to Mr. Hilliard why he "should not be found in contempt of [sic] and punished accordingly[.]" The rule provided a request for "such relief to which [the Trust] is entitled," but specifically, attorney fees, reasonable expenses and costs. The rule itself contained no specific request for compliance with the underlying orders.

Given both the purported prayer of the Rule and the ultimate imposition of attorney fees and costs without a mechanism for facilitating compliance with the underlying orders, we conclude that, although characterized as a finding of civil contempt, the trial court's order was punitive in result and, therefore, constituted criminal contempt.

Reference to the trial court's judgment indicates that it arrived at a finding of civil contempt by application of the preponderance of the evidence burden of proof. However, given our determination regarding the punitive result of the judgment, such an application was erroneous. As the imposition of an erroneous burden of proof is a legal error, *de novo* review of the material facts is required. *See Tracie F. v. Francisco D.*, 15-1812 (La. 3/15/16), 188 So.3d 231. We turn to that review.

*Rule for Contempt –* De Novo *Review*

As noted above, the Trust, through Preston, asserted in the Rule for Contempt that Mr. Hilliard failed to comply with the July 22, 2013 judgment, particularly as it related to the delivery of files from the law firm of Hunter, Hunter & Sonnier, LLC, stating:

Notwithstanding the statements to the contrary contained in "Hilliard's" Notice of Compliance with Court Order filed on August 21, 2013, as of January 10, 2014, neither "Hilliard", nor anyone acting on his behalf has delivered any files or privilege log from Hunter, Hunter & Sonnier, LLC, despite the fact that it is admitted in this matter that Hunter, Hunter & Sonnier, LLC and its predecessor firms have represented the Living Trust. There is little doubt that "Hilliard" has not complied with the Court's Order.

The Trust further referenced the trial court's order of October 2, 2013,[22] which pertained to the production of the files of Rusty Hardin & Associates, and asserted that Mr. Hilliard and his counsel "have not complied with this order either."

In addition to these assertions of noncompliance, the Trust claimed that:

[B]ecause of the refusal to provide to the Living Trust its files, including litigation files, this Court is asked to declare and affirm that Preston Marshall is Trust Protector, and Co-Trustee of the Living Trust and is entitled to the possession of all files of any lawyer who is, or has in the past performed legal services for the Living Trust.

This attention for a distinct declaration of entitlement to possession—within the Rule for Contempt—is expanded upon in the Trust's Proposed Findings of Fact and Conclusions of Law, submitted in support of the Rule for Contempt. Therein the Trust advanced theories of ownership of various documents as well as conclusions of law that it felt supported its argument.[23] In fact, it is this expansive pursuit of the

---

[22] The Order of October 2, 2013 provided that:

IT IS HEREBY ORDERED that Finley Hilliard immediately comply with all production requests as required by this Court's July 22, 2013 Judgment, including all Rusty Hardin files in Finley Hilliard's possession, excluding only a privilege log representing the common interest privilege asserted by third parties in Rusty Hardin's ELEANOR PIERCE (MARSHALL) STEVENS LIVING TRUST files.

IT IS FURTHER ORDERED that Finley Hilliard supplement that production with any corrupted files and any and all other Trust records from Rusty Hardin as soon as possible, but no later than Monday, August 26, 2013.

[23] By way of example, we point out that, after noting the directive of the July 22, 2013 judgment, the Trust explained that the Hunter Firm "delivered a letter to Hilliard outlining the basis for the Hunter Firm's denial of production of Living Trust files and claiming a privilege in favor of the Estate over such files[,]" that "Shayna Sonnier, as representative of the Hunter Firm, testified that, because the Living Trust made an Internal Revenue Code Section 645 election for Federal tax purposes, the Living Trust became a part of and was subsumed by the Estate, thereby forming the basis of the Estate's claimed privilege over Living Trust Files[,]" and that Ms. Stevens "executed a Last Will and Testament in accordance with Texas law" and therein, "designated the Living Trust as the residuary legatee of her remaining assets at the time of her death. This 'pour over' provision names Finley Hilliard, in his capacity as Trustee of the Living Trust, as the residuary legatee of her estate." The Trust ultimately asserted that "the Living Trust is the owner of the files at issue herein.

contempt proceeding—and the fact that the proceedings adapted to that construct—that proved challenging in this case.

As pursued, a claim of constructive contempt under La.Code Civ.P. art. 224(2) inquires whether there was a "[w]ilful disobedience" of the subject order/judgment. While acknowledging that the trial court has discretion in whether to find a person guilty of constructive contempt, the supreme court has explained that "a finding that a person wilfully disobeyed a court order in violation of La.Code of Civil Proc. art. 224(2) must be based on a finding that the accused violated an order of the court 'intentionally, knowingly, and purposefully, without justifiable excuse.'" *Lang v. Asten, Inc.*, 05-1119, p. 1 (La. 1/13/06), 918 So.2d 453, 454 (quoting, in part, *Brunet v. Magnolia Quarterboats, Inc.*, 97-187, p. 10 (La.App. 5 Cir. 3/11/98), 711 So.2d 308, 313, *writ denied*, 98-0990 (La. 5/29/98), 720 So.2d 343). The burden of proving the contemptuous behavior rests with the moving party. *Chauvin v. Chauvin*, 46,365 (La.App. 2 Cir. 6/22/11), 69 So.3d 1192; *Fleming v. Armant*, 12-43 (La.App. 5 Cir. 5/31/12), 97 So.3d 1071. Similarly, when specifically addressing contempt within the criminal context, the supreme court has found that willful disobedience requires "an intent to defy the authority of the court." *Dauphine*, 843 So.2d at 1108.

In consideration of this standard, we find that the record before this court indicates that the Trust failed in its burden of proving willful disobedience, whether pursued as either civil or criminal contempt. Rather, given that the contempt proceedings spanned over the course of multiple hearing dates and produced the sizeable record now before the court, it is clear that much remained unresolved regarding the parameters of the July 22, 2013, judgment.

---

As such, Preston, in his capacity as current co-trustee of the Living Trust, is entitled to possession of the original Living Trust files." As an alternative to its demand for the production of documents, it asserted that "the files at issue are not in any way subject to a privilege claim in favor of the Estate. As such, Preston, as co-trustee of the Living Trust, is entitled to possess copies of the original documents at issue."

Reference to the judgment indicates that it stated broadly that Mr. Hilliard was to deliver to his counsel (who was ordered to deliver in turn to the court) "all documents, records, communications and files *related in any way to the Trust*, its current or former Trustees, its assets, liabilities, or business" in his possession. (Emphasis added.) The judgment thereafter referred to this expansive definition as the "Trust Records[.]" Additionally, and as excerpted above, the judgment provided for the delivery of these "Trust Records" not only from Mr. Hilliard, but "all Trust Records, original Trust files, and other Trust property" from representative law firms as well as third parties. In those instances where "privilege" was claimed, the judgment provided for the delivery of the subject items and privilege logs for *in camera* inspection.

Mr. Hilliard thereafter delivered tens of thousands of pages of documents as well as various privilege and ownership logs. However, the Rule for Contempt was provoked due, in part, to the very claims of privilege and ownership that seemingly arose from the July 22, 2013 judgment's conflation of the concepts "related" to the Trust and its various entities with "Trust Records[.]" The latter term, alone, would seem to imply property of the Trust.

This search for the contours of the underlying judgment is seen not only by the extensive hearings, but by the evidence adduced. In determining whether Mr. Hilliard complied with the order of the judgment, the trial court heard testimony from three expert witnesses who offered opinions regarding: tax and trust law (as well as attorney/client privileges in trusts and estates); Texas estate and probate; as well as wills, trusts, estate and probate within Texas law and application of those items to taxation issues. That expert testimony probed legal issues regarding the ownership of the subject documents claimed by entities beyond Mr. Hilliard and/or the Trust.

Resolution of this ownership question was seemingly integral not only to the trial court's finding of willful disregard on the part of Mr. Hilliard, but was reflected

21

by factual determinations[24] within the judgment of contempt. Yet again, privilege and ownership of the subject documents was contested by people and entities not party to the suit. In particular, and as referenced above, Pierce, in various capacities, maintained a petition of intervention that the trial court continued to defer pending determination of the contempt matter, while Elaine Marshall claimed ownership and privilege over documents held by one of the law firms.

Notwithstanding any animus that the trial court may have appreciated between Mr. Hilliard, Preston, and Pierce, the multifaceted nature of the task presented to Mr. Hilliard undercuts the argument of willful disregard. Rather, Mr. Hilliard was held to a standard of interpreting the July 22, 2013 judgment and then, as a former Trustee, wresting items "related" to the Trust from law firms and legal entities that claimed ownership and privilege to those very items. While he was an experienced CPA and longtime Trustee with knowledge of the Marshall and Stevens affairs, he was held to this exacting standard as a layperson. In order to resolve the same interrelated legal issues as to production facing Mr. Hilliard, the trial court was able to consider multiple days of testimony, volumes of exhibits, and expert opinion regarding the laws of multiple jurisdictions. After our own review, we conclude that Preston failed to meet his burden of proving willful disregard.

Undoubtedly, property that could have fit the broad description of the initial judgment was not turned over by Mr. Hilliard, and, further, the record reflects much of the trial court's observations regarding the friction between the individual actors in this matter. However, the breadth and lack of clarity in the initial judgment, as well as the sophistication of the legal issues invoked at the contempt proceedings preclude, on

---

[24] For example, the judgment referenced Ms. Stevens' Estate's tax returns, a matter over which the Estate claimed a privilege, and resulted in a factual finding that:

> Eleanor Pierce (Marshall) Stevens Estate tax returns are based on property assets and liabilities of the Trust, and they are clearly jointly owned and necessary for the record history of both. But because the contents of the tax returns are related to trust activities as well as record keeping, the Court feels the tax returns have greater connection to the Trust than they do to the Estate.

this evidence, a finding that Mr. Hilliard's actions or inactions were "'intentionally, knowingly, and purposefully, without justifiable excuse.'" *Lang*, 918 So.2d at 454 (quoting *Brunet*, 454 So.2d at 313). While testifying, Preston, as mover and current Trustee, denied knowledge of the identity of the items at issue.[25] We are mindful too, that contempt proceedings are to "be strictly construed, and the policy of our law does not favor extending their scope." *Capital City Press, L.L.C. v. Louisiana State Univ. Sys. Bd. of Supervisors*, 13-1803, 13-1804, p. 7 (La.App. 1 Cir. 12/30/14), 168 So.3d 669, 674. *See also Lacombe v. Randy Theriot Constr.*, 94-822 (La.App. 3 Cir. 12/7/94), 647 So.2d 531.

We similarly point out that many of these same issues, particularly regarding the pending claims of ownership and privilege, are applicable to the reversal of the motion to compel that the trial court granted in conjunction with the contempt ruling. Whether the Trust, through its current Co-Trustees, pursues further production of subject documents is a remedy distinct from pursuing that course through the contempt proceedings against Mr. Hilliard, as the former trustee. *See Barnett v. Barnett*, 15-766, p. 14 (La.App. 5 Cir. 5/26/16), 193 So.3d 460, 470 (explaining that "[c]ontempt proceedings are designed for the vindication of the dignity of the court rather than for the benefit of a litigant."), *writ denied*, 16-1205 (La. 10/10/16), 207 So.3d 406. *See also Lacombe*, 647 So.3d. 531.

For these reasons, we find merit in Mr. Hilliard's arguments regarding the application of the burden of proof in this matter and, upon *de novo* review, reverse both the trial court's ruling of contempt as well as granting of the motion to compel.

---

[25] On extensive questioning, Preston answered "I don't know" when asked if he was seeking documents from "the files of J Howard Marshall, II or his estate"; "J Howard Marshall, II's living trust"; "[a]ny charitable foundations or trust related to J Howard Marshall, II"; "the Hunter Firm's representation of E Pierce Marshall, Sr[.]"; "the Hunter Firm's file for it's representation of E Pierce Marshall, Sr.'s estate"; "the Hunter file related to its representation of charitable foundations or trusts related to E Pierce Marshall, Sr[.]"; "related to the Hunter Firm's representation of MarOpCo, Inc[.]"; "files from the Hunter Firm's representation, the Hunter Firm's file for representing MarOpCo, Trof, Inc. or Idzig, LLC"; "the Hunter Firm's files for representing Elaine Marshall"; or "files related to Elaine Marshall as the executor of E Pierce Marshall's estate[.]"

23

**DECREE**

For the foregoing reasons, the trial court's denial of the motion to recuse is affirmed. The Judgment of July 25, 2016, and the Amended Judgment of August 26, 2016, are reversed to the extent they granted the Rule for Contempt and the Motion to Compel, including the order that the appellant, Finley Hilliard, "pay all costs and reasonable attorneys' fees related to the Motion to Compel and the Contempt Proceedings." The judgments are affirmed to the extent they denied the request for sanctions filed by the appellant—Finley Hilliard. Costs of this proceeding are assessed to the appellee, The Eleanor Pierce (Marshall) Stevens Living Trust, through its Trustee, Preston Marshall.

**AFFIRMED IN PART. REVERSED IN PART.**